UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GREYSTONE CDE, LLC,

                Plaintiff,

        - against -

SANTE FE POINTE L.P.,
SANTE FE POINTE MANAGEMENT, LLC,
RANT LLC, and
THEOTIS F. OLIPHANT,

                Defendants.
-----------------------------------------------------------------X

07 CV. 8377 (RPP)

**ORDER**

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: 5/22/08

CV 08 2756

E-filing

**ROBERT P. PATTERSON, JR., U.S.D.J.**

     At oral argument on May 13, 2008, the Court ruled to deny Plaintiff's motion for summary judgment on procedural grounds and without prejudice, to deny Plaintiff's motion to dismiss, and to grant Defendants' motion to transfer the case to United States District Court for the Northern District of California. By order signed May 19, 2008, the Court reiterated the grounds for its oral rulings on May 13, 2008, and specifically stated that the motion for summary judgment was denied without prejudice.

     On May 19, 2008, Plaintiff filed the instant motion for reconsideration or reargument with respect only to the Court's decision to deny Plaintiff's motion for summary judgment. Plaintiff also moved for a stay of the transfer of this action pending the Court's decision on the instant motion. In the alternative, Plaintiff requested that the order denying the motion for summary judgment specifically state that denial is without prejudice. By letter dated May 20, 2008, Defendants opposed Plaintiff's motion and

sought reimbursement of their attorneys' fees and costs associated with opposing the motion for reconsideration pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Under Local Rule 6.3, a party seeking reconsideration must "set[] forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Local Civ. R. 6.3; see also Eisemann v. Greene, 204 F.3d 393, 395 n.1 (2d Cir. 2000) (per curiam) (stating that the movant "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion"). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); accord Alzamora v. Village of Chester, No. 06 Civ. 7644, 2008 WL 375091, at *3 (S.D.N.Y. Feb. 8, 2008).

In its motion for reconsideration, Plaintiff failed to raise any facts or controlling decisions that the Court overlooked in its May 13, 2008 decision. The moving papers simply request the Court to reissue its decision with the opposite result. Accordingly, there are no grounds for reconsideration under the Local Civil Rules. Plaintiff's alternative request for relief has already been granted. The Court's order signed May 19, 2008 specifically stated that the motion for summary judgment was denied without prejudice.

Plaintiff's motion for reconsideration and a stay (Document No. 71) is hereby denied, and the Clerk remains under order to transfer this case to the United States District Court for the Northern District of California. Defendants' request for attorneys'

2

fees and costs is denied because the attorneys' fees incurred in writing Defendants' letter

of May 20, 2008 would be de minimus.

IT IS SO ORDERED.

Dated: New York, New York
    May **2 l**, 2008

Robert P. Patterson, Jr.
U.S.D.J.

**Copies of this Opinion and Order sent to:**

*Attorneys for Plaintiff*
Harnik Wilker & Finkelstein LLP
ATTN: Stephen M. Harnik
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel: 212-599-7575
Fax: 212-867-8120

*Attorneys for Defendants*
Akerman Senterfitt LLP
ATTN: Donald N. David, Brian A. Bloom, Jeremy A. Shure
335 Madison Avenue, Suite 2600
New York, NY 10017
Tel: 212-880-3800
Fax: 212-880-8965

A CERTIFIED COPY
J. MICHAEL McMAHON    CLERK

BY
    DEPUTY CLERK

3

Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
Greystone CDE, LLC,

        Plaintiff,

    - against -

Sante Fe Pointe, L.P.,
Sante Fe Pointe Management, LLC,
Rant LLC, and
Théotis F. Oliphant

        Defendants.
----------------------------------------------------------X

Docket No.

**COMPLAINT**

   Plaintiff, Greystone CDE, LLC, ("plaintiff") files this complaint against defendants, Sante Fe

Pointe L.P., Sante Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant.  Upon

knowledge with respect to itself and its own acts, and upon information and belief with respect to all

other persons and matters, plaintiff, by its attorneys, respectfully alleges:

### NATURE OF THE ACTION

   This action arises out of defendants' breach of a loan agreement, loan documents and a

note to make payment when due, and the failure of defendants, Sante Fe Pointe Management,

LLC, Rant LLC and Theotis F. Oliphant, as guarantors, to make payment when due.  Plaintiff

brings suit to recover damages suffered as a result of these actions.

## PARTIES

1.      Plaintiff is a limited liability company duly organized and existing under the laws of the State of Delaware authorized to do business in New York with an office at 152 West 57th St., 60th floor, New York, NY 10019.

2.      At all times relevant hereto, Sante Fe Pointe L.P. was and is a limited liability partnership organized and existing under the laws of the State of Oklahoma, with its principal offices at 16416 Oconee Creek Drive, Edmond, OK 73013.

3.      At all times relevant hereto, Sante Fe Pointe Management, LLC, was and is a limited liability company organized and existing under the laws of the State of Oklahoma, with an address at 16416 Oconee Creek Drive, Edmond, OK 73013.

4.      At all relevant times hereto, Theotis F. Oliphant was and is an individual and a resident of the State of California with an address at 113 Carmel Avenue, El Cerrito, CA 94530.

5.      At all times relevant hereto, Rant LLC was and is a limited liability company organized and existing under the laws of the State of Delaware, with an address at 113 Carmel Avenue, El Cerrito, CA 94530, and is an affiliate of Sante Fe Pointe, L.P.

## JURISDICTION AND VENUE

6.      The matter in controversy exclusive of interest and costs exceeds seventy five thousand ($75,000.00) dollars.

7.      The court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 (a)(2).

8.      Jurisdiction and venue in this forum have been contractually agreed upon.

## BACKGROUND

9.      On or about December 20, 2006, for good and valuable consideration, Greystone

CDE, LLC, as lender (hereinafter "plaintiff" and/or "Lender") entered into a Bridge Loan Agreement (the "the Loan Agreement") with defendant Santa Fe Pointe L.P., as Borrower, (hereinafter "Borrower" and/or "defendant") in the maximum principal amount of $500,000 (the "Loan") to finance predevelopment expenses of an affordable housing development to be known as the Sante Fe Pointe Apartments located at 125 SW 74th St., Oklahoma City, OK which was to be developed and owned by Borrower, (hereinafter the "Project"). A copy of the Loan Agreement is annexed hereto and hereby made a part hereof as exhibit "A."

10.     Prior thereto, on or about July 12, 2006, defendant Rant LLC (hereinafter "Rant" and/or "Guarantor" and/or "defendant") had entered into a certain Contract for Sale of Real Estate, dated July 12, 2006, as amended by Addendum #1, for the purchase by Rant of the Project real estate from Walnut Creek Apartments, Inc., (hereinafter the "Purchase Agreement"). The Purchase Agreement provided for a Closing to occur not later than March 31, 2007 which was extendable under certain conditions.

11.     A condition, among others, of the Loan Agreement between plaintiff and Borrower was that the Purchase Agreement be assigned from Rant LLC to Borrower. On or about December 20, 2006, that assignment was made.

12.     Another condition, among others, of the Loan Agreement was that Borrower's security interest in and to all of Borrower's right, title and interest in the Purchase Contract be assigned to plaintiff. On or about December 20, 2006, that assignment was made. A copy of the Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20. 2006, is annexed hereto and hereby made a part hereof as exhibit "B."

13.     On or about December 20, 2006, for good and valuable consideration , Lender entered into a Guaranty and Suretyship Agreement (hereinafter "Guaranty") with defendant Theotis F.

Oliphant (hereinafter "Oliphant" and/or "Guarantor" and/or "defendant") whereby Oliphant, *inter alia*, unconditionally and irrevocably guaranteed and became a surety to Lender, for the due, punctual and full payment and performance of Borrower's obligations evidenced by the Loan Agreement and/or incurred under the Loan Documents, (as defined in the Loan Agreement) both principal and interest, and any refinancing or refunding of any thereof, and all other amounts due or to become due under the Loan Agreement and the other Loan Documents. A copy of the Guaranty is annexed hereto and hereby made a part hereof as exhibit "C."

14.     On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe Management , LLC, which is a General Partner of Sante Fe Pointe L.P. (hereinafter the "General Partner" and/or "defendant" and/or "Guarantor") and Oliphant,  who is a Limited Partner of Sante Fe Pointe, L.P., as Pledgors, (hereinafter alternately referred to as the "Partners") entered into a Partner Guaranty, Pledge and Security Agreement with Lender whereby  *inter alia* the General Partner absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of any and all payment obligations and other covenants and obligations of Borrower to Lender in the Loan Documents; and Oliphant, as Limited Partner, reaffirmed his obligations under the Guaranty. A copy of the Partner Guaranty, Pledge and Security Agreement with Lender (hereinafter alternately referred to as the "Partner Pledge") is annexed hereto and hereby made a part hereof as exhibit "D."

15.     On or about December 20, 2006, for good and valuable consideration, Rant entered into a Developer Limited Guaranty, Pledge and Security Agreement with Lender wherein, *inter alia*, Rant (hereinafter alternatively referred to as "Developer") absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of its obligations to Lender under the Loan Documents.  A copy of the

Developer Limited Guaranty, Pledge and Security Agreement (hereinafter alternatively referred to as "Developer Fee Pledge") is annexed hereto and hereby made a part hereof as exhibit "E."

16.    On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. Assigned the Project Documents to Lender, and Rant LLC assigned the Construction Contract to Sante Fe Pointe L.P.    A copy of the Assignment of Project Documents and the Assignment and Assumption of Construction Contract is annexed hereto and hereby made a part hereof as exhibit "F."

17.    On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. executed and delivered to plaintiff a Bridge Promissory Note ("Note") a Specimen copy of which is annexed hereto and hereby made a part hereof as exhibit "G."

18.    On or about June 29, 2007, for good and valuable consideration, Sante Fe Pointe L.P. executed an Allonge to Bridge Promissory Note whereby the Maturity Date of the Note was amended to be December 15, 2007, and Lender gave its consent thereto.    A copy of the Allonge and the Consent is annexed hereto and hereby made a part hereof as exhibit "H."

19.    By the Note, Sante Fe Pointe L.P. promised to pay to plaintiff on the earlier of December 15, 2007, or upon an Event of Default, (as defined in the Loan Agreement) the sum of $500,000 with interest.

20.    On or about August 21, 2007, defendants were notified that they were in default of their obligations under the instruments annexed hereto as exhibits "A" – "F." This Notice of Default is annexed hereto as exhibit "I" and read as follows:

August 21, 2007

**VIA EMAIL AND FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of
       December 20, 2006 between Greystone CDE, LLC (the "Lender")
       and the Borrower

Ladies and Gentlemen:

The purpose of this letter is to notify you that you are in default in respect of the loan from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan Agreement"). Capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)    pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the contract for purchase and sale of the Project without the same having been extended;

(b)    pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or expiration of the commitment to provide the equity investment in the Project;

(c)    pursuant to Section 9.1(k) of the Bridge Loan Agreement, the occurrence of changes in the operation, prospects and financial condition of

the Borrower which, in our reasonable judgment materially adversely affect the ability of the Borrower to repay the Note and perform its other obligations under the Bridge Loan Documents, including, without limitation, the expiration without extension of the contract for purchase and sale of the Project, the failure to obtain and maintain a commitment to provide the equity investment in the Project, the deterioration of the physical condition of the Project and the lack of progress in advancement of the application for HUD financing due to unavailability of information required to be provided by the Borrower;

(d)    pursuant to Section 3.06(d) of the Guaranty, the occurrence of the foregoing events of default under the Bridge Loan Agreement;

(e)    pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(b) of the Guaranty requiring the Guarantor to provide the Lender with notice of the foregoing, which constitute material adverse changes in the business, operations, conditions (financial or otherwise) or prospects of the Guarantor; and

(f)    pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(a) of the Guaranty requiring the Guarantor to provide the Lender with (i) copies of the Guarantor audited annual financial statements on or before January 20, 2007 and (ii) a copy of the Guarantor's federal income tax return within ten (10) days of the filing thereof.

You are hereby further notified of the following breaches of covenants contained in the Bridge Loan Documents which, if not cured within thirty (30) days of the date of this notice, will constitute additional Events of Default pursuant to Section 9.1(b) of the Bridge Loan Agreement:

1.  under Section 7.1(a) of the Bridge Loan Agreement, failure to provide annual financial statements of the Borrower for the year ended December 31, 2007, certified by an independent certified public accountant, on or before April 30, 2007;

2.  under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the borrower for the quarter ended March 31, 2007, on or before May 15, 2007;

3.  under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the Borrower for the quarter ended June 30, 2007, on or before August 15, 2007;

4.  under Section 7.5(e) of the Bridge Loan Agreement, failure of the Borrower to notify the Lender of the Events of Default described herein

and the other events described herein which, with the giving of notice or the passage of time or both, would constitute Events of Default;

5.  under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

6.  under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

7.  under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

8.  under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

9.  under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

10. under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of

Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity.  Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions, representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

## COUNT I
## AGAINST SANTE FE POINTE, L.P.
### (Breach of Contract)

21.    The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

22.    Upon an Event of Default (as defined in the Loan Agreement) the indebtedness evidenced by the Note became due and payable.

23.    Plaintiff's Notice of Default is a non-exhaustive description of Events of Default (as defined in the Loan Agreement) which have occurred herein as of the date of the Notice of Default.

24.    On September 18, 2007, plaintiff gave defendant Notice of Acceleration of the Note. A copy of the Notice of Acceleration is annexed hereto and hereby made a part hereof as exhibit "J."

25.    Defendant has failed and refused to pay the indebtedness due.

26.    Plaintiff has been damaged as a result of defendant's failure to pay the Note as agreed.

27.     By reason of the foregoing, plaintiff is owed not less than $534,594.51 as of September 18, 2007.

28.     It has been, and is, necessary for plaintiff to institute this action for collection of the amounts due under the Note and plaintiff has been compelled to and has employed attorneys to institute and prosecute this action and is entitled to its reasonable attorneys' fees and costs.

## COUNT II
## AGAINST ALL THE DEFENDANTS
### (Breach of Contract)

29.     The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

30.     A condition among others of the Loan Agreement was that Borrower not default on the Purchase Contract.

31.     In the Purchase Contract, borrower, as assignee, committed itself to provide equity investment in the Project by a date certain.

32.     A further condition of the Loan Agreement was that Borrower not default on its commitment to provide equity in the Project by a date certain.

33.     A further condition among others of the Loan Agreement was that there be no change in the financial condition of Borrower or any of the defendants herein which might adversely affect its/their ability to perform its/their obligations under the Loan Agreement.

34.     On or about September 10, 2007, defendants Rant and Sante Fe Pointe, L.P. executed Addendum #3 to the Purchase Contract which purported to extend the Purchase Contract through

October 15, 2007 and provided for Buyer extension options with additional earnest money following October 15, 2007.

35.    Section 4, headed "Negative Covenants," of the Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, (previously annexed as exhibit "B") provides in pertinent part that "Borrower shall not …(b) amend or modify any of the terms of the Purchase Agreement, except with the prior written consent of the Lender; (c) terminate or give or join in any material waiver, consent or approval with respect to the Purchase Agreement, except with the prior written consent of the Lender; …(f) take any other action in connection with the Purchase Agreement which would materially impair the value of the rights or interests of the Borrower or the Lender whereunder or therein without the prior written consent of the Lender (to be granted or withheld in the Lender's sole discretion);..."

36.    Defendants Rant and Sante Fe Pointe L.P. neither requested, nor were granted, plaintiff's consents as provided above.

37.    Defendants have not cured the defaults itemized 1-10 in the Notice of Default and their time to cure has expired.

38.    Plaintiff has duly performed any and all conditions on its part to be performed, including disbursement of the Loan.

39.    No part of the Loan disbursed by plaintiff to Borrower, or for its benefit, has been repaid, although duly demanded.

40.    Defendants, and each of them, have breached, and are continuing to breach their respective obligations under the instruments annexed hereto and under the Bond Documents.

41.    By reason of the foregoing, plaintiff is owed not less than $484,950.75 plus interest, costs and attorneys' fees.

## COUNT III
## AGAINST ALL THE DEFENDANTS
(Breach of Contract)

42.     The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

43.     All covenants, agreements obligations and liabilities of the Borrower are a direct and primary obligation of the Guarantor pursuant to the Guaranty, the Partners pursuant to the Partner Pledge, and the Developer pursuant to the Developer Fee Pledge, and each of Guarantor's, Partners' and Developer's obligations are not as a surety. These defendants' respective guarantees are of payment and performance and not of collection. Their obligations are continuing, absolute and unconditional, irrespective of any circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety.

44.     The Guarantor, the Partners and the Developer unconditionally and irrevocably waived any rights and defenses they have, had, or will have, in respect of the causes of action alleged herein.

45.     By reason of the foregoing, plaintiff is owed $534,594.51 plus interest, costs and attorneys' fees.

*WHEREFORE*, plaintiff demands judgment as follows:

a)  On Count I  against Sante Fe Pointe L.P. not less than  $534,594.51;

b)  On Count II against all the defendants, jointly and severally, not less than $484.950.75;

c) On Count III against all the defendants, jointly and severally, not less than $534,594.51;

d) Awarding plaintiff the cost of this action, including attorneys' fees as permitted pursuant to the instruments at issue and applicable law;

e) Awarding plaintiff pre-and post-judgment interest;

f) Granting such other relief as the court deems just and proper.

Dated:      New York, New York
            September 26, 2007

                        Harnik Wilker & Finkelstein LLP

                        by: Stephen M. Harnik, Esq. (SH 9889)
                        Attorneys for Plaintiff
                        Greystone CDE, LLC
                        645 Fifth Avenue, 7th Floor
                        New York, NY 10022
                        (212) 599-7575

Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Greystone CDE, LLC,                                        Docket No. 07 civ. 8377 (RPP)

                              Plaintiff,

              - against -
Sante Fe Pointe, L.P.,                          **FIRST AMENDED COMPLAINT**
Sante Fe Pointe Management, LLC,                **AS OF RIGHT**
Rant LLC, and
Theotis F. Oliphant

                              Defendants.
-----------------------------------------------------------X

        Plaintiff, Greystone CDE, LLC, ("plaintiff") files this complaint against defendants, Sante Fe

Pointe L.P., Sante Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant.  Upon

knowledge with respect to itself and its own acts, and upon information and belief with respect to all

other persons and matters, plaintiff, by its attorneys, respectfully alleges:

                              **NATURE OF THE ACTION**

        This action arises out of defendants' breach of a loan agreement, loan documents and a

note to make payment when due, and the failure of defendants, Sante Fe Pointe Management,

LLC, Rant LLC and Theotis F. Oliphant, as guarantors, to make payment when due.  Plaintiff

brings suit to recover damages suffered as a result of these actions.

## PARTIES

1.     Plaintiff is a limited liability company duly organized and existing under the laws of the State of Delaware authorized to do business in New York with an office at 152 West 57th St., 60th floor, New York, NY 10019.  Its members are Greystone Development Corp. and Greystone Funding Corp., both duly organized and existing under the laws of Virginia.

2.     At all times relevant hereto, Sante Fe Pointe L.P. was and is a limited liability partnership organized and existing under the laws of the State of Oklahoma, with its principal offices at 16416 Oconee Creek Drive, Edmond, OK 73013.  Its Partner is Sante Fe Pointe Management, LLC whose managing member is a citizen of California.

3.     At all times relevant hereto, Sante Fe Pointe Management, LLC, was and is a limited liability company organized and existing under the laws of the State of Oklahoma, with an address at 16416 Oconee Creek Drive, Edmond, OK 73013.  Its managing member is a citizen of California.

4.     At all relevant times hereto, Theotis F. Oliphant was and is an individual and a citizen of the State of California with an address at 113 Carmel Avenue, El Cerrito, CA 94530.

5.     At all times relevant hereto, Rant LLC was and is a limited liability company organized and existing under the laws of the State of Delaware, with an address at 113 Carmel Avenue, El Cerrito, CA 94530, and is an affiliate of Sante Fe Pointe, L.P.  Its managing member is a citizen of California.

### JURISDICTION AND VENUE

6.     The matter in controversy exclusive of interest and costs exceeds seventy five thousand ($75,000.00) dollars.

7.     The court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 (a) (2), in that there is complete diversity between the parties.

2

8.      Personal jurisdiction in this forum has been contractually agreed upon.

## BACKGROUND

9.      On or about December 20, 2006,  for good and valuable consideration, Greystone CDE, LLC, as lender (hereinafter "plaintiff" and/or "Lender") entered into a Bridge Loan Agreement (the "the Loan Agreement") with defendant Santa Fe Pointe L.P., as Borrower, (hereinafter "Borrower" and/or "defendant") in the maximum principal amount of $500,000 (the "Loan") to finance predevelopment expenses of an affordable housing development to be known as the Sante Fe Pointe Apartments located at 125 SW 74th St., Oklahoma City, OK which was to be developed and owned by Borrower, (hereinafter the "Project").  A copy of the Loan Agreement is annexed hereto and hereby made a part hereof as exhibit "A."

10.     Prior thereto, on or about July 12, 2006, defendant Rant LLC (hereinafter "Rant" and/or "Guarantor" and/or "defendant") had entered into a certain Contract for Sale of Real Estate, dated July 12, 2006, as amended by Addendum #1, for the purchase by Rant of the Project real estate from Walnut Creek Apartments, Inc., (hereinafter the "Purchase Agreement").  The Purchase Agreement provided for a Closing to occur not later than March 31, 2007 which was extendable under certain conditions.

11.     A condition, among others, of the Loan Agreement between plaintiff and Borrower was that the Purchase Agreement be assigned from Rant LLC to Borrower. On or about December 20, 2006, that assignment was made.

12.     Another condition, among others, of the Loan Agreement was that Borrower's security interest in and to all of Borrower's right, title and interest in the Purchase Contract be assigned to plaintiff.  On or about December 20, 2006, that assignment was made.  A copy of the

Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, is annexed hereto and hereby made a part hereof as exhibit "B."

13.     On or about December 20, 2006, for good and valuable consideration , Lender entered into a Guaranty and Suretyship Agreement (hereinafter "Guaranty") with defendant Theotis F. Oliphant (hereinafter "Oliphant" and/or "Guarantor" and/or "defendant") whereby Oliphant, *inter alia,* unconditionally and irrevocably guaranteed and became a surety to Lender, for the due, punctual and full payment and performance of Borrower's obligations evidenced by the Loan Agreement and/or incurred under the Loan Documents, (as defined in the Loan Agreement) both principal and interest, and any refinancing or refunding of any thereof, and all other amounts due or to become due under the Loan Agreement and the other Loan Documents. A copy of the Guaranty is annexed hereto and hereby made a part hereof as exhibit "C."

14.     On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe Management , LLC, which is a General Partner of Sante Fe Pointe L.P. (hereinafter the "General Partner" and/or "defendant" and/or "Guarantor") and Oliphant, who is a Limited Partner of Sante Fe Pointe, L.P., as Pledgors, (hereinafter alternately referred to as the "Partners") entered into a Partner Guaranty, Pledge and Security Agreement with Lender whereby *inter alia* the General Partner absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of any and all payment obligations and other covenants and obligations of Borrower to Lender in the Loan Documents; and Oliphant, as Limited Partner, reaffirmed his obligations under the Guaranty. A copy of the Partner Guaranty, Pledge and Security Agreement with Lender (hereinafter alternately referred to as the "Partner Pledge") is annexed hereto and hereby made a part hereof as exhibit "D."

15.     On or about December 20, 2006, for good and valuable consideration, Rant entered into a Developer Limited Guaranty, Pledge and Security Agreement with Lender wherein, *inter alia,* Rant (hereinafter alternatively referred to as "Developer") absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of its obligations to Lender under the Loan Documents.  A copy of the Developer Limited Guaranty, Pledge and Security Agreement (hereinafter alternatively referred to as "Developer Fee Pledge") is annexed hereto and hereby made a part hereof as exhibit "E."

16.     On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. assigned the Project Documents to Lender, and Rant LLC assigned the Construction Contract to Sante Fe Pointe L.P.  A copy of the Assignment of Project Documents and the Assignment and Assumption of Construction Contract is annexed hereto and hereby made a part hereof as exhibit "F."

17.     On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. executed and delivered to plaintiff a Bridge Promissory Note ("Note") a Specimen copy of which is annexed hereto and hereby made a part hereof as exhibit "G."

18.     On or about June 29, 2007, for good and valuable consideration, Sante Fe Pointe L.P. executed an Allonge to Bridge Promissory Note whereby the Maturity Date of the Note was amended to be December 15, 2007, and Lender gave its consent thereto.  A copy of the Allonge and the Consent is annexed hereto and hereby made a part hereof as exhibit "H."

19.     By the Note, Sante Fe Pointe L.P. promised to pay to plaintiff on the earlier of December 15, 2007, or upon an Event of Default, (as defined in the Loan Agreement) the sum of $500,000 with interest.

20.    On or about August 21, 2007, defendants were notified that they were in default of their obligations under the instruments annexed hereto as exhibits "A" – "F." This Notice of Default is annexed hereto as exhibit "I" and read as follows:

August 21, 2007

**VIA EMAIL AND FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of
       December 20, 2006 between Greystone CDE, LLC (the "Lender")
       and the Borrower

Ladies and Gentlemen:

       The purpose of this letter is to notify you that you are in default in respect of the loan from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan Agreement"). Capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)     pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the contract for purchase and sale of the Project without the same having been extended;

(b)     pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or expiration of the commitment to provide the equity investment in the Project;

(c)     pursuant to Section 9.1(k) of the Bridge Loan Agreement, the occurrence of changes in the operation, prospects and financial condition of the Borrower which, in our reasonable judgment materially adversely affect the ability of the Borrower to repay the Note and perform its other obligations under the Bridge Loan Documents, including, without limitation, the expiration without extension of the contract for purchase and sale of the Project, the failure to obtain and maintain a commitment to provide the equity investment in the Project, the deterioration of the physical condition of the Project and the lack of progress in advancement of the application for HUD financing due to unavailability of information required to be provided by the Borrower;

(d)     pursuant to Section 3.06(d) of the Guaranty, the occurrence of the foregoing events of default under the Bridge Loan Agreement;

(e)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(b) of the Guaranty requiring the Guarantor to provide the Lender with notice of the foregoing, which constitute material adverse changes in the business, operations, conditions (financial or otherwise) or prospects of the Guarantor; and

(f)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(a) of the Guaranty requiring the Guarantor to provide the Lender with (i) copies of the Guarantor audited annual financial statements on or before January 20, 2007 and (ii) a copy of the Guarantor's federal income tax return within ten (10) days of the filing thereof.

You are hereby further notified of the following breaches of covenants contained in the Bridge Loan Documents which, if not cured within thirty (30) days of the date of this notice, will constitute additional Events of Default pursuant to Section 9.1(b) of the Bridge Loan Agreement:

1.  under Section 7.1(a) of the Bridge Loan Agreement, failure to provide annual financial statements of the Borrower for the year ended December

31, 2007, certified by an independent certified public accountant, on or before April 30, 2007;

2.  under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the borrower for the quarter ended March 31, 2007, on or before May 15, 2007;

3.  under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the Borrower for the quarter ended June 30, 2007, on or before August 15, 2007;

4.  under Section 7.5(e) of the Bridge Loan Agreement, failure of the Borrower to notify the Lender of the Events of Default described herein and the other events described herein which, with the giving of notice or the passage of time or both, would constitute Events of Default;

5.  under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

6.  under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

7.  under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

8.  under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

9.  under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

10. under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions, representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

## COUNT I
## AGAINST SANTE FE POINTE, L.P.
### (Breach of Contract)

21.     The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

9

22.    Upon an Event of Default (as defined in the Loan Agreement) the indebtedness evidenced by the Note became due and payable.

23.    Plaintiff's Notice of Default is a non-exhaustive description of Events of Default (as defined in the Loan Agreement) which have occurred herein as of the date of the Notice of Default.

24.    On September 18, 2007, plaintiff gave defendant Notice of Acceleration of the Note. A copy of the Notice of Acceleration is annexed hereto and hereby made a part hereof as exhibit "J."

25.    Defendant has failed and refused to pay the indebtedness due.

26.    Plaintiff has been damaged as a result of defendant's failure to pay the Note as agreed.

27.    By reason of the foregoing, plaintiff is owed not less than $534,594.51 as of September 18, 2007.

28.    It has been, and is, necessary for plaintiff to institute this action for collection of the amounts due under the Note and plaintiff has been compelled to and has employed attorneys to institute and prosecute this action and is entitled to its reasonable attorneys' fees and costs.

## COUNT II
## AGAINST ALL THE DEFENDANTS
### (Breach of Contract)

29.    The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

30.    A condition among others of the Loan Agreement was that Borrower not default on the Purchase Contract.

31.    In the Purchase Contract, borrower, as assignee, committed itself to provide equity investment in the Project by a date certain.

32.    A further condition of the Loan Agreement was that Borrower not default on its commitment to provide equity in the Project by a date certain.

33.    A further condition among others of the Loan Agreement was that there be no change in the financial condition of Borrower or any of the defendants herein which might adversely affect its/their ability to perform its/their obligations under the Loan Agreement.

34.    On or about September 10, 2007, defendants Rant and Sante Fe Pointe, L.P. executed Addendum #3 to the Purchase Contract which purported to extend the Purchase Contract through October 15, 2007 and provided for Buyer extension options with additional earnest money following October 15, 2007.

35.    Section 4, headed "Negative Covenants," of the Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, (previously annexed as exhibit "B") provides in pertinent part that "Borrower shall not …(b) amend or modify any of the terms of the Purchase Agreement, except with the prior written consent of the Lender; (c) terminate or give or join in any material waiver, consent or approval with respect to the Purchase Agreement, except with the prior written consent of the Lender; …(f) take any other action in connection with the Purchase Agreement which would materially impair the value of the rights or interests of the Borrower or the Lender whereunder or therein without the prior written consent of the Lender (to be granted or withheld in the Lender's sole discretion);…"

36.    Defendants Rant and Sante Fe Pointe L.P. neither requested, nor were granted, plaintiff's consents as provided above.

37.    Defendants have not cured the defaults itemized 1-10 in the Notice of Default and their time to cure has expired.

38.     Plaintiff has duly performed any and all conditions on its part to be performed, including disbursement of the Loan.

39.     No part of the Loan disbursed by plaintiff to Borrower, or for its benefit, has been repaid, although duly demanded.

40.     Defendants, and each of them, have breached, and are continuing to breach their respective obligations under the instruments annexed hereto and under the Bond Documents.

41.     By reason of the foregoing, plaintiff is owed not less than $484,950.75 plus interest, costs and attorneys' fees.

## COUNT III
## AGAINST ALL THE DEFENDANTS
### (Breach of Contract)

42.     The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

43.     All covenants, agreements obligations and liabilities of the Borrower are a direct and primary obligation of the Guarantor pursuant to the Guaranty, the Partners pursuant to the Partner Pledge, and the Developer pursuant to the Developer Fee Pledge, and each of Guarantor's, Partners' and Developer's obligations are not as a surety.  These defendants' respective guarantees are of payment and performance and not of collection.  Their obligations are continuing, absolute and unconditional, irrespective of any circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety.

44.    The Guarantor, the Partners and the Developer unconditionally and irrevocably waived any rights and defenses they have, had, or will have, in respect of the causes of action alleged herein.

45.    By reason of the foregoing, plaintiff is owed $534,594.51 plus interest, costs and attorneys' fees.

*WHEREFORE*, plaintiff demands judgment as follows:

a)  On Count I against Sante Fe Pointe L.P. not less than $534,594.51;

b)  On Count II against all the defendants, jointly and severally, not less than $484,950.75;

c)  On Count III against all the defendants, jointly and severally, not less than $534,594.51;

d)  Awarding plaintiff the cost of this action, including attorneys' fees as permitted pursuant to the instruments at issue and applicable law;

e)  Awarding plaintiff pre-and post-judgment interest;

f)  Granting such other relief as the court deems just and proper.


Dated:        New York, New York
              October 5, 2007


                              Harnik Wilker & Finkelstein LLP


                              by: Stephen M. Harnik, Esq. (SH 9889)
                              Attorneys for Plaintiff
                              Greystone CDE, LLC
                              645 Fifth Avenue, 7th Floor
                              New York, NY 10022
                              (212) 599-7575

Donald N. David (DD 5222)
Brian A. Bloom  (BB 5722)
Jeremy A. Shure  (JS 0490)
AKERMAN SENTERFITT LLP
335 Madison Avenue, Suite 2600
New York, New York 10017
<u>Telephone</u>:  212.880.3800
<u>Facsimile</u>:  212.880.8965

*Attorneys for Defendants and Counterclaimants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREYSTONE CDE, LLC, <br><br> *Plaintiff-Counterclaim Defendant,* <br><br> – against – <br><br> SANTE FE POINTE, L.P., <br> SANTE FE POINTE MANAGEMENT, LLC <br> RANT LLC, and <br> THEOTIS F. OLIPHANT, <br><br> *Defendants-Counterclaimants,* <br><br> – against – <br><br> GREYSTONE SERVICING CORPORATION, INC., <br><br> *Additional Counterclaim Defendant.* | Civil Case No:  07-CV.8377 (RPP) <br><br> **ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |

Defendants Santa Fe Pointe, L.P. (erroneously sued herein as "Sante Fe Point, L.P."),

Santa Fe Pointe Management, LLC (erroneously sued herein as "Sante Fe Pointe Management,

LLC"), Rant LLC and Theotis F. Oliphant (collectively referred to herein as the "Defendants"),

through its undersigned counsel, Akerman Senterfitt LLP, as and for their Answer to the

Amended Complaint filed by Plaintiff Greystone CDE, LLC ("Greystone"), dated October 5, 2007 ("Amended Complaint") state as follows:

## PARTIES

1.    Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph "1" of the Amended Complaint, and therefore deny same.

2.    Defendants admit the allegations contained in the first sentence of paragraph "2" of the Amended Complaint.  Defendants are without information or knowledge sufficient to form a belief as to the truth of the allegations contained in the second sentence of paragraph "2" of the Amended Complaint as the word "partner" has not been defined.

3.    Defendants admit the allegations contained in paragraph "3" of the Amended Complaint.

4.    Defendants admit the allegations contained in paragraph "4" of the Amended Complaint.

5.    Defendants admit that Rant LLC was and is a limited liability company organized and existing under the law of the State of Delaware, with an address at 113 Carmel Avenue, El Cerrito, CA 94530, but is without information or knowledge sufficient to form a belief as to whether Rant LLC is an affiliate of Sante Fe Pointe, L.P. as the term "affiliate" is not defined in the Amended Complaint.

## JURISDICTION AND VENUE

6.    Defendants admit the allegations contained in paragraph "6" of the Amended Complaint.

7. Defendants admit the allegations contained in paragraph "7" of the Amended Complaint.

8. With regard to the allegations contained in paragraph "8", Defendants admit that the Partner Guaranty, Pledge and Security Agreement, contained a permissive jurisdiction clause under which Defendants could be subject to personal jurisdiction in New York. Defendants reserve the right to contest the validity of the Partner Guarantee, Pledge and Security Agreement along with the provisions contained therein.

## BACKGROUND

9. Defendants admit the allegations contained in paragraph "9" of the Amended Complaint.

10. Defendants deny that the Purchase Agreement provides for the purchase by Rant LLC of the Project real estate from Walnut Creek Apartments, Inc. Defendants also deny that the Purchase Agreement (properly termed the "Contract for the Sale of Real Estate") provided for a Closing to occur not later than March 31, 2007.

11. Defendants admit the allegations contained in paragraph "11" of the Amended Complaint.

12. Defendants admit the allegations contained in paragraph "12" of the Amended Complaint.

13. Defendants deny the allegations contained in paragraph "13" of the Amended Complaint except admit that on or about December 20, 2006 Oliphant entered into a "Guaranty and Suretyship Agreement" with Plaintiff.

14. Defendants deny the allegations contained in paragraph "14" of the Amended Complaint, except admit that on or about December 20, 2006 Santa Fe Pointe LP and Oliphant entered into a Partner Guaranty, Pledge and Security Agreement with Plaintiff.

15. Defendants deny the allegations contained in paragraph "15" of the Amended Complaint, except admit that on or about December 20, 2006 Rant entered into a Developer Limited Guaranty, Pledge and Security Agreement" with Plaintiff.

16. Defendants deny that Santa Fe Pointe LP assigned the Project Documents to Lender pursuant to Exhibit "F." Without opining or admitting to the validity and/or enforceability of the documents contained in Exhibit "F," Defendants state that the document entitled "Assignment of Project Documents," and contained within Exhibit "F," purportedly created a security interest in the Project Documents, subject to certain restrictions.

17. Defendants admit the allegations contained in paragraph "17" of the Amended Complaint.

18. Defendants admit the allegations contained in paragraph "18" of the Amended Complaint.

19. Defendants deny and state that the Note does not provide for the maturity date and/or the specific payment detailed in paragraph "19."

20. Defendants deny and state that the Notice of Default, annexed to the Amended Complaint as Exhibit "I," does not read as detailed by Plaintiff in paragraph "20."

## COUNT I
## AGAINST SANTE FE POINTE, L.P.
(Breach of Contract)

21.     Defendants neither admit nor deny the allegations in paragraph "21," as this is not an allegation to which responsive pleading is required.

22.     Defendants deny and state that the Loan Agreement does not provide for automatic acceleration upon all Events of Default detailed in section 9.1 of the Loan Agreement.

23.     The allegation contained in paragraph "23" is a legal conclusion and therefore is not an allegation to which responsive pleading is required. Defendants leave Plaintiff to its proofs with respect to this allegation. To the extent responsive pleading is required: deny.

24.     Defendants admit that Exhibit "J" to the Amended Complaint is a letter from Greystone CDE, LLC to Sante Fe Pointe, L.P., Sante Fe Pointe Management, L.L.C., Theotis F. Oliphant, and Rant, LLC, which purports to be a "notice of acceleration." However, Defendants deny that allegation number "24" is an element of a breach of contract claim against Santa Fe Pointe LP.

25.     Defendants deny the allegations contained in paragraph "25" and further deny that the allegation in paragraph "25" is an element of a breach of contract claim against Santa Fe Pointe LP.

26.     The allegation contained in paragraph "26" is a legal conclusion and not an allegation to which responsive pleading is required. Defendants leave Plaintiff to its proofs with respect to this allegation. To the extent that responsive pleading is required: deny.

27.     The allegation contained in paragraph "27" is a legal conclusion and not an allegation to which responsive pleading is required. Defendants leave Plaintiff to its proofs with respect to this allegation. To the extent that responsive pleading is required: deny.

28.    Defendants deny the allegations contained in paragraph "28" of the Amended Complaint.

## COUNT II
## AGAINST ALL THE DEFENDANTS
### (Breach of Contract)

29.    Defendants neither admit nor deny the allegations in paragraph "29," as this is not an allegation to which responsive pleading is required.

30.    Defendants deny the allegation contained in paragraph "30" and state that the Loan Agreement does not state that a condition thereto was that Borrower not default on the Purchase Contract.

31.    Defendants deny the allegation contained in paragraph "31" of the Amended Complaint.

32.    Defendants deny the allegation contained in paragraph "32" and state that the Loan Agreement does not provide that a condition thereto was that Borrower not default on its commitment to provide equity in the Project by a date certain.

33.    Defendants deny the allegation contained in paragraph "33" as it does not accurately reflect the condition of paragraph 5.1(c) of the Loan Agreement.

34.    Defendants neither admit nor deny the allegation in paragraph "34" as Addendum #3, as provided by Plaintiff, is not an executed copy of Addendum #3 as claimed in allegation number "34." Defendants reserve the right to further reply to this allegation if supplied with an executed copy of Addendum #3 at some future date.

35.    Defendants admit the allegations contained in paragraph "35" of the Amended Complaint, but state that the quotation contained therein is not complete.

36.     Defendants object to the allegation contained in paragraph "36" as being vague and ambiguous.  However, to the extent that a response is required:  deny.

37.     The allegation contained in paragraph "37" is a legal conclusion, as whether or not there was a default is a legal determination.  As such, paragraph "37" is not an allegation to which responsive pleading is required, and Defendants leave Plaintiff to its proofs with respect to whether there has been a "default."  To the extent that responsive pleading is required:  deny.

38.     Defendants object to the allegations contained in paragraph "38" as non-specific as to the origin and/or nature of the "conditions" referred to in paragraph "38."  However, to the extent that a response is required:  deny.  Notwithstanding the foregoing, Defendants admit that a certain disbursement was made by Plaintiff; the facts surrounding said disbursement are in dispute.

39.     The allegation contained in paragraph "39" is a legal conclusion, as the fact of whether or not there was "due demand" is a legal determination.  As such, paragraph "39" is not an allegation to which responsive pleading is required, and Defendants leave Plaintiff to its proofs with respect to whether there has been due demand.  To the extent that responsive pleading is required:  deny.

40.     The allegation contained in paragraph "40" is a legal conclusion and not an allegation to which responsive pleading is required.  Defendants leave Plaintiff to its proofs with respect to this allegation.  To the extent that responsive pleading is required:  deny.

41.     The allegation contained in paragraph "41" is a legal conclusion and not an allegation to which responsive pleading is required.  Defendants leave Plaintiff to its proofs with respect to this allegation.  To the extent that responsive pleading is required:  deny.

## COUNT III
## AGAINST ALL DEFENDANTS
(Breach of Contract)

42.     Defendants neither admit nor deny the allegations in paragraph "42," as this is not an allegation to which responsive pleading is required.

43.     Defendants object to the allegations contained in paragraph "43" as they are compound.  However, to the extent that a response is required:  deny.

44.     Defendants deny the allegations contained in paragraph "44" of the Amended Complaint.

45.     Defendants deny the allegations contained in paragraph "45" of the Amended Complaint.

## AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to Plaintiff's Amended Complaint, Defendants allege as follows:

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE
(Failure to State a Claim)

46.     Plaintiff's Amended Complaint fails to set forth facts sufficient to state a claim upon which relief may be granted, and further fails to state facts sufficient to entitle Plaintiff to the relief sought, or any other relief from Defendants.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE
(Prior Pending Action)

47.     Plaintiff's action is barred by the existence of an identical prior pending action in the United States District Court in and for the Northern District of California, styled *Santa Fe*

*Pointe LP, et al. v. Greystone Servicing Corporation, Inc, et al.*, Index Number 3:07-cv-05454-JCS.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE
### (Fraud)

48.　Plaintiff's action, and each and every claim made therein, is barred by virtue of the fact that Plaintiff committed fraud against Defendants.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE
### (Undue Influence)

49.　Plaintiff's action, and each and every claim made therein, is barred by virtue of the doctrine of undue influence.

50.　As such, the alleged agreements, including the Guaranty (annexed to the Amended Complaint as exhibit "C") are *void ab initio*.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE
### (Economic Duress)

51.　Plaintiff's action, and each and every claim made therein, is barred because to the extent that Defendants entered into any of the alleged agreements, they did so under economic duress.

52.　As such, the alleged agreements, including the Guaranty (annexed to the Amended Complaint as exhibit "C") are *void ab initio*.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE
### (Lack of Consideration)

53.     Plaintiff's action, and each and every claim made therein, is barred by virtue of the fact that the alleged agreements were not supported by valid consideration.

54.     As such, the alleged agreements, including the Guaranty (annexed to the Amended Complaint as exhibit "C") are *void ab initio*.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE
### (Breach of Fiduciary Duty)

55.     Plaintiff's action, and each and every claim made therein, is barred by virtue of Plaintiff's breach of its fiduciary duty owed to Defendants.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

56.     Plaintiff's action, and each and every claim made therein, is barred by the doctrine of unclean hands.

57.     As such, the alleged agreements, including the Guaranty (annexed to the Amended Complaint as exhibit "C") are *void ab initio*.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE
### (Estoppel)

58.     Plaintiff's action, and each and every claim made therein, is barred by the doctrine of estoppel.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE
### (Unjust Enrichment)

59.     Plaintiff's action, and each and every claim made therein, is barred because a recovery in favor of Plaintiff would cause Plaintiff to be unjustly enriched.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE
### (Breach of the Covenant of Good Faith and Fair Dealing)

60.     Plaintiff's action, and each and every claim made therein, is barred by virtue of Plaintiff's breach of the covenant of good faith and fair dealing.

61.     As such, the various agreements entered into by the Defendants are voidable and/or void.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE
### (Right to Assert Additional Defenses)

62.     Defendants hereby give notice that they intend to rely on any additional affirmative defenses that become available or apparent through discovery and/or the factual development of this case or otherwise, and thus reserve the right to amend their Answer to assert such additional defenses.  Defendants also hereby give notice that they intend to rely on and reserve the right to assert such other or related defenses that may become available in the event of a determination that this action, or some part thereof, is governed by the substantive law of a state other than New York or of a foreign country, or in the event it becomes apparent that the facts on which this action is premised lack any necessary nexus to New York.

## COUNTERCLAIMS

Defendants and Counter-Claimants Theotis F. Oliphant, Santa Fe Pointe, LP, Santa Fe Pointe Management, LLC, and Rant, LLC (collectively, the "Oliphant Parties") allege the following:

## DEMAND FOR JURY TRIAL

The Oliphant Parties demand a jury trial as provided in Federal Rule of Civil Procedure 38(a).

## PRELIMINARY ALLEGATIONS
## RELATED TO THE COUNTERCLAIMS

63.     This is an action for damages and declaratory relief arising because the Greystone parties effectively sabotaged the Oliphant Parties' efforts in 2006 and 2007 to acquire and rehabilitate a 224-unit apartment building (the "Apartment Building") in Oklahoma City known as Santa Fe Pointe (the "Project") under a federal program encouraging development of low income housing projects.

64.     The Federal Housing Administration, through its Office of Housing and Urban Development ("HUD"), offers incentives to private developers to buy, renovate, and manage housing that will be income-restricted—and therefore affordable—to low income families. The developer under this program obtains a loan to fund a portion of this activity, which is insured by HUD (and therefore is non-recourse to the developer), and the developer is paid a fee equal to 14% of the total allowable project costs. Typically the developer also funds a portion of the project through local government agency funds that are supported by tax-exempt bonds issued by that agency. Such was to be the case here.

65.     The Oliphant Parties had a contract to purchase the Apartment Building that would be renovated and managed under the federal program.  They hired Greystone as their fiduciary to deal with HUD to obtain the HUD-insured project loan.  They also arranged, through another entity, for the tax-exempt bond financing, which would carry six-figure transaction fees.

66.     Greystone negligently performed its duties as fiduciary and did not timely apply for the HUD-insured loan.  The Oliphant Parties therefore risked losing the project entirely because of the timing exigencies of the bond financing and the Apartment Building purchase.

67.     To ameliorate the effects of its malfeasance, Greystone represented to the Oliphant Parties, through a written "term sheet," that it would give a non-recourse bridge loan to allow the Oliphant Parties to purchase the Apartment Building and fund the bond financing.  Greystone waited, however, until the opportune time to pull a classic "bait-and-switch."  It was not until after the bonds had been issued and sold (and the Oliphant Parties were obligated for the transaction fees), and on the eve of the close of the Apartment Building transaction, that Greystone sent the formal loan documents to the Oliphant Parties.  In those documents, Greystone had unilaterally changed the bridge loan terms, knowing the Oliphant Parties had no choice but to accept or risk losing the Project.  Greystone would no longer lend on the Apartment Building purchase, only on the bond fund costs.  And, more significantly, Greystone turned the non-recourse loan into one Mr. Oliphant and his wife had to personally guaranty.

68.     After Mr. and Mrs. Oliphant were forced to sign their personal guaranties, Greystone abandoned its HUD fiduciary obligations to the Oliphant Parties, concentrating instead on ensuring that its position as a bridge loan lender was not compromised.  With a blind eye to its conflicted situation, Greystone surreptitiously began dealing with a substitute developer to take over the Project, unilaterally withdrew the Oliphant Parties' HUD application,

declared a bogus default of the bridge loan (which was never in financial default), and sent letters to the financial community disparaging the Oliphant Parties.  All of this while still contractually obligated to act as the Oliphant Parties' fiduciary.

69.    Aside from project expenditures and lost opportunity costs, the Oliphant Parties will ask the jury to award significant punitive damages against Greystone.

## THE PARTIES

70.    The Counterclaimants are:

A.    <u>Theotis F. Oliphant ("Mr. Oliphant")</u> is an individual who resides in Contra Costa County, California.

B.    <u>Santa Fe Pointe, LP ("SFP")</u> is an Oklahoma limited partnership formed by Mr. Oliphant in October 2006 to acquire and rehabilitate the Apartment Building and to be the "Borrower" entity on any Project loans.

C.    <u>Santa Fe Pointe Management, LLC ("SFM")</u> is an Oklahoma limited liability company formed by Mr. Oliphant in October 2006 to manage the Project and be SFP's general partner.  At all times material, Mr. Oliphant was SFM's managing member.

D.    <u>Rant, LLC ("Rant")</u> is a Delaware limited liability company having its principal place of business Contra Costa County, California.  At all times material, Mr. Oliphant was Rant's managing member.

71.    The Counterdefendant and Third-Party Defendant are:

E.    <u>Greystone CDE, LLC ("Greystone CDE")</u> is a Delaware corporation and an affiliate of Greystone Servicing.

F.   Greystone Servicing Corporation, Inc. ("Greystone Servicing") is a Georgia corporation and one of the nation's leading originators of Federal Housing Administration (FHA) multifamily loans.

72.   Greystone Servicing and Greystone CDE are sometimes referred to either singularly or jointly as "Greystone" in this pleading because in fact the numerous Greystone affiliated corporations often refer to themselves in such a manner.   It is often difficult to distinguish one from the other, although they formally claim to be distinct legal entities.   The ironic significance of this looseness of formal corporate separation will become apparent below.

## JURISDICTION AND VENUE

73.   The Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exclusive of interest and costs exceeds seventy-five thousand ($75,000) dollars.

74.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## COMMON ALLEGATIONS

### Greystone Becomes the Oliphant Parties' Fiduciary in Dealings with HUD

75.   Greystone is one of the nation's leading originators of HUD multifamily loans. The HUD financing originated by Greystone provides loans to developers that are long-term, fully amortizing, fixed rate, and non-recourse.   Greystone has regional origination offices throughout the United States, and it provides loan officers, underwriters, analysts and consultants to assist developers in successfully acquiring, rehabilitating, and financing projects such as this one.

76.     Greystone is a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program. This program establishes national standards for approved lenders to prepare, process and submit their own loan applications. In this process, Greystone serves as an intermediary between their developer-clients and HUD offices to facilitate approval of applications and to obtain financing within required time frames.

77.     On or about September 7, 2006, Mr. Oliphant (on behalf of an entity to be created) and Greystone Servicing entered into a written agreement by which the Oliphant Parties appointed Greystone Servicing to serve as the exclusive agent to process the HUD application for financing the acquisition and rehabilitation of the Project (the "Engagement Agreement"). On the same date, Mr. Oliphant paid $14,000 in fees to Greystone Servicing as required by the Engagement Agreement.

78.     Under the Engagement Agreement and FHA procedures, Greystone Servicing became the exclusive lender to underwrite and process a HUD-insured loan for the Project on behalf of the Oliphant Parties. The Oliphant Parties were neither authorized nor permitted to communicate directly with HUD as to the HUD application.

**Because Greystone Servicing Does Not Timely Complete the
HUD Application, It Agrees To Extend a Non-Recourse Bridge Loan**

79.     Also on or about September 7, 2006, the Oliphant Parties engaged Seibert Branford Shank & Company, LLC ("SBS") to serve as investment bank underwriter to sell $7,095,000 of tax-exempt bonds through which the Project was to be partially financed. The bond financing had to close by December 20, 2006 or the bond issue would expire.

80.     To accomplish timely sale of the tax-exempt bonds, SBS had to coordinate the bond sales with Greystone's HUD application submittal. To this end, SBS impressed upon

Greystone the importance of completing the HUD application by November 2006. In late September 2006, SBS distributed to the Oliphant Parties and to Greystone a financing timetable setting a specific date for Greystone to submit the HUD application. Miriam Simon ("Simon"), Greystone's senior underwriter for the Project, received the SBS document and participated in project meetings and telephone conferences on behalf of Greystone. Mr. Oliphant informed Simon he was willing to pay incremental costs to accelerate the filing of the HUD application.

81.    On or about October 5, 2006, Mr. Oliphant, Simon, and SBS representatives met with HUD officials in Oklahoma City about the Project. There, HUD officials emphasized that the HUD application had to be submitted by the first week of December 2006 or HUD's review of it would be delayed.

82.    Greystone knew at this time that the Oliphant Parties wanted to complete the purchase of the Apartment Building by December 20, 2006 and would lose the $7,095,000 of tax-exempt bond financing if the bond financing was not closed by then.

83.    On or about October 27, 2006, Simon informed the Oliphant Parties that the HUD application process was behind schedule. In light of the December 20, 2006 deadlines, the Oliphant Parties were understandably troubled by this revelation and communicated their concerns to Matt James ("James"), the business development person at Greystone Serving who initially sold the Oliphant Parties on using Greystone's services. To assuage the Oliphant Parties' concerns, James told the Oliphant Parties that if Greystone Servicing in fact could not complete the HUD application in time, an affiliated Greystone company (Greystone CDE) would extend a non-recourse bridge loan to fund both the purchase of the Apartment Building and the cost of issuing the bonds being sold by SBS. The loan would "bridge" the period between the

December 20 deadline and when the ultimate HUD-insured Project loan issued, and would be repaid from the HUD-insured loan proceeds.

84.    On or about November 13 and 14, 2006, the Oliphant Parties delivered to Greystone Servicing the final items needed to allow Greystone Servicing to submit the Oliphant Parties's application to HUD, which included architectural plans and financial certifications of Project participants.  All other aspects concerning the timely execution of the HUD application were within Greystone Servicing's sole control.  A full two weeks remained before Greystone Servicing's scheduled submittal of the HUD application.

85.    Despite having the needed items required to complete the application, Greystone on November 14, 2006 told the Oliphant Parties for the first time that it would not submit the HUD application in 2006.  James reiterated to the Oliphant Parties, however, that Greystone was committed to funding both the purchase of the Apartment Building and the cost of issuing the bonds to be sold by SBS, and would do so through a non-recourse bridge loan.

86.    The bridge loan concept was not initiated by the Oliphant Parties.  It was the brainchild of Greystone and was necessary only because of Greystone's negligence in not having the HUD application ready by the scheduled dates.

87.    The terms of the bridge loan were confirmed on November 16, 2006 through a term sheet Greystone Servicing submitted to the Oliphant Parties on behalf of its affiliate Greystone CDE, which would be the lending entity.  The term sheet said that Greystone CDE would extend a six-month non-recourse bridge loan in the amount of $4,348,400.

88.    On the basis of the term sheet commitment, SBS proceeded with the tax-exempt bond issuance.  On November 21, 2006, SBS presented a final financing timetable in which it confirmed that all costs of issuing and selling the tax-exempt bonds would be paid through the

Greystone bridge financing. Thereafter, SBS proceeded to complete arrangements for bond issuance, the Oliphant Parties notified the building seller the sale close would be by December 20, and Mr. Oliphant made arrangements to travel to Oklahoma City on December 18 through 20 to facilitate that event.

### Knowing The Oliphant Parties Had No Choice but To Accept, Greystone Changes the Bridge Loan Terms at the Eleventh Hour to a Recourse Loan

89. The tax-exempt bonds were priced on December 13 and 14, and sold by SBS to institutional investors. As a result, the Oliphant Parties became responsible for approximately $251,000 in bond issuance costs.

90. On December 17, 2006, the literal eve of Mr. Oliphant's departure to Oklahoma City, Greystone's counsel delivered the first drafts of the bridge loan documents. These differed significantly from the financing initially promised. They provided for a bridge loan of only $500,000 (rather than the $4,348,400), which would cover the bond issuance cost but not the Apartment Building acquisition. In addition, instead of the promised non-recourse financing, the loan documents required Mr. Oliphant and his wife to personally guarantee the loan, an entirely new and different condition. The documents were presented on a take-it-or-leave-it basis.

91. Greystone knew full well that the Oliphant Parties could not "leave it." The $251,000 bond issuance costs had already been incurred because the bonds had been sold. The Oliphant Parties had no choice but to sign the bridge loan documents as presented. Copies of the loan documents are attached to Greystone CDE's First Amended Complaint in this action.

## Greystone Abdicates Its Fiduciary Responsibilities to
## Oliphant as a HUD Underwriter and Becomes an Antagonist

92.     At the time the bridge loan was extended, Greystone wore two hats.  Under the first, it was obligated as a fiduciary to diligently and faithfully pursue the Oliphant Parties' best interests and assist in seeing that the Oliphant Parties succeeded in obtained HUD-insured financing for the Project.  Under the second, it was a lender with the self-interest in seeing that its bridge loan was repaid.  As shown below, Greystone ultimately abdicated and ignored its fiduciary role to the Oliphant Parties, pursuing only its self-interest.

93.     Greystone Servicing did not submit the Oliphant Parties' final HUD application until on or about March 14, 2007.

94.     Part of the financial structure of the Project included the sale of tax credits to a purchaser/syndicator.  Under the original HUD application, the tax credit purchaser/syndicator was the Richman Group.  In mid-April 2007, however, the Richman Group backed out of the deal.  Thereafter, with the knowledge and consent of Greystone, the Oliphant Parties pursued other syndicators and co-developers to complete the financial aspects of the Project.

95.     On or about June 14, 2007, the Oliphant Parties were introduced to David Henry ("Henry"), an experienced Arkansas developer.  The Oliphant Parties sought to bring Henry into the Project as a co-developer.  The Oliphant Parties obtained the agreement of the seller of the Apartment Building to extend the purchase closing date to July 31, 2007.  Because Greystone's bridge loan financing was inadequate to fund the Apartment Building acquisition, the Oliphant Parties intended to bring Henry into the deal and arrange bridge loan financing through Henry's financial sources to acquire the Apartment Building.

96.     On or about July 5, 2007, the Oliphant Parties met with HUD personnel in Oklahoma City and learned that the HUD application had been rejected by a letter sent out

earlier that day. At this meeting, the HUD representative also informed the Oliphant Parties that at a HUD conference in St. Louis on June 19, Greystone's representative Simon had gone out of her way to make unsolicited disparaging remarks about the Project to the HUD representative from Oklahoma City. When the Oliphant Parties brought these facts to James's attention, James reassured Oliphant that "one of the top HUD loan executives at Greystone" was going to intercede. On or about July 11, 2007, the Oliphant Parties were informed that HUD had agreed to reconsider the application without starting the process anew, and that Greystone would submit written materials responsive to HUD's concerns.

97.     In the meantime, the Oliphant Parties and Henry proceeded to attempt to close the Apartment Building purchase. They obtained a loan commitment from a lender and reached an agreement with the seller to carry back a second mortgage in the amount of $500,000. Shortly before the scheduled July 31, 2007 close date, however, Henry had second thoughts about the deal, and consequently the July 31 date passed without the closing being consummated.

98.     In early August 2007, Greystone surreptitiously began negotiating with Henry on ways to complete the Project without the Oliphant Parties. On August 9, 2007, without prior notice or warning to the Oliphant Parties, Greystone Servicing unilaterally withdrew the Oliphant Parties' HUD loan application.

99.     The withdrawal of the HUD application placed at risk the $7,095,000 in tax exempt bond proceeds. It also caused the seller of the Apartment Building to temporarily terminate negotiations with the Oliphant Parties for further extensions of the close date because it made it appear that it would take another ten to twelve months if the HUD process were started anew.

### Greystone Declares the Bridge Loan in Default and
### Wrongfully Refuses To Rescind the Default After Cure

100.    On or about August 22, 2007, Thom Ruffin ("Ruffin") of Greystone CDE informed the Oliphant Parties that the Oliphant Parties would receive a letter declaring the bridge loan in default. Ruffin told the Oliphant Parties that Greystone had been talking to Henry about terms upon which Henry would take over the Oliphant Parties' deal.

101.    The default letter was dated August 21, 2007. In it, Greystone CDE did not claim the loan was in financial default, because it was not. Instead, the letter cited default as being the expiration of the close date for the purchase and sale of the Apartment Building, without that date having been extended. Of course, it was Greystone's unilateral act of withdrawing the HUD application that had made negotiations to extend the close date difficult in the first place. (The letter also specified a variety of supposed "defaults" that were inaccurate, were not defaults, or had previously been waived by Greystone.)

102.    Over the next several days, Greystone pressured the Oliphant Parties to assign all interest in the Project to Henry with Mr. Oliphant assuming responsibility to pay more than $200,000 of the bridge loan and agreeing not to sue Greystone for its malfeasance in handling the HUD application. The terms of such a proposed "assignment agreement and covenant not to sue" were financially unacceptable to the Oliphant Parties.

103.    Although Greystone's unilateral withdrawal of the HUD application had made negotiations with the seller of the Apartment Building difficult, the Oliphant Parties nonetheless were able to obtain another agreement to extend the close date. On September 11, 2007, the Oliphant Parties notified Greystone of this development, showed Greystone the document that verified the extension, and requested that the Greystone default notice be rescinded.

104.    In a telephone conference on September 14, 2007, Greystone refused to rescind the default notice, claiming the bridge loan was still in default because there was (Greystone representatives claimed) no tax credit syndicator.  In fact, however, the bridge loan was not in default for that reason.  First of all, Greystone had waived this condition in April 2007 when the initial tax credit syndicator withdrew from the deal.  Moreover, the Oliphant Parties had obtained a commitment from a successor tax credit syndicator in June 2007 that, at the time of the September 14 telephone conference, was still in effect and had not been withdrawn.

105.    By letter dated September 21, 2007, Greystone CDE notified the Oliphant Parties that it was accelerating the bridge loan and declaring all amounts due under the bridge loan note immediately due and payable.

**Greystone Exacerbates Its Wrongdoing and Further
Undercuts The Oliphant Parties' Ability To Develop the Project
By Disparaging the Oliphant Parties to the Financial Community**

106.    On October 29, 2007, Greystone Servicing caused a letter (the "October 29 Letter") to be delivered to the Oklahoma County Finance Authority, the government entity who issued the tax-exempt bonds for the Project.  The letter specifically referenced the tax-exempt bond issue that had been sold for the Project in December 2006.   The October 29 letter contained a statement that "the borrower's contract for the purchase of the Santa Fe Apartments project expired without being extended," and that this led to "a default under the bridge loan documents" resulting in litigation "in Federal Court in New York."  The October 29 Letter omitted any mention that the Oliphant Parties had extended the contract, and was artfully drafted to create the impression the Oliphant Parties had unilaterally defaulted, the Project was dead, and Greystone had filed a collection against the Oliphant Parties.  A copy of Greystone's complaint

in this action (the "New York Complaint") was included with the October 29 Letter (purportedly for the recipient's "information"), yet no mention was made of the fact that the Oliphant Parties had filed, over a month earlier, a lawsuit in California seeking damages for Greystone's malfeasance in handling the Oliphant Parties' HUD application.

107.    The effect of the October 29 Letter and accompanying New York Complaint was to gratuitously publish the disputed, objectionable and scandalous matter in the New York Complaint before the Oliphant Parties even had an opportunity to respond to those statements.

108.    In addition to the Oklahoma County Finance Authority, Greystone Servicing delivered the October 29 Letter and the accompanying New York Complaint to the following:

> Standard & Poor's
> (dominent bond-rating institution)
>
> Bank of Oklahoma, N.A.
> (trustee for the tax-exempt bond issue)
>
> Floyd Law Firm, P.C. of Norman, Oklahoma
> (outside counsel for Oklahoma County Finance Authority)
>
> Siebert Brandford Shank
> (investment bank and underwriter for the tax-exempt bond issue)
>
> Eichner & Norris PLLC of Washington, DC
> (outside counsel for Siebert Brandford Shank)
>
> ImageMaster, Inc. of Ann Arbor, Michigan
> (commercial printing company for bond issuance)
>
> Shawn Smith and Smith Real Estate Development, Inc. of Edmond, Oklahoma
> (Oliphant's local tax credit real estate professional)

109.    The October 29 Letter and accompanying New York Complaint were designed to, and did, interfere with the Oliphant Parties' ability to successfully complete the financing, rehabilitation and development of the Project.  For example:

G.    By delivering the materials to Standard & Poors, Greystone intended to, and did, expose the tax-exempt bonds issued and sold for the Project to a significant risk of being downgraded or de-rated, which would cause the interest rate to increase, thus making it more difficult and more costly, and potentially impossible, to complete the Project.

H.    By delivering the materials to the Bank of Oklahoma, N.A., the bond trustee, Greystone intended to, and did, damage the marketability of the tax-exempt bonds.

I.    By delivering the materials to the Department of Housing and Urban Development ("HUD"), Greystone jeopardized completion of the Project because HUD could decline to insure the loan in the face of such incomplete, misleading, and disparaging statements about the Oliphant Parties.

110.    The delivery of the October 29 Letter and accompanying New York Complaint was malicious, highly detrimental to the Oliphant Parties' reputation and business esteem, and was intended to prevent the Oliphant Parties from completing the Project and/or from mitigating damages occasioned by Greystone's conduct.

### FIRST CLAIM FOR RELIEF
**(Negligence)**

111.    The Oliphant Parties incorporate the allegations of Paragraphs 1 through 110 as if fully restated herein.

112.    Greystone owed the Oliphant Parties a duty of due care by virtue of the business relationship established through the Engagement Agreement by which the Oliphant Parties

appointed Greystone Servicing to serve as its exclusive agent to process the HUD application for financing the acquisition and rehabilitation of the Project.

113.    Greystone owed the Oliphant Parties a duty of due care by virtue of Greystone Servicing's position as a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program and the respective roles and involvements of the Oliphant Parties in the Project.

114.    Greystone owed the Oliphant Parties a duty to use such skill, prudence and diligence as other HUD-approved underwriters for the FHA's Multifamily Accelerated Processing (MAP) program commonly possess and exercise.

115.    Greystone breached its duties of due care owed to the Oliphant Parties as to the Project and the HUD financing.  The breaches of Greystone, which are ongoing, include, but are not limited to, failing to expedite processing, preparation and submission of the HUD application, causing delay in the processing, preparation and submission of the HUD application, making and publishing unsolicited, unprivileged, and derogatory statements about the Oliphant Parties and the Project to HUD representatives and others, changing the terms of the bridge financing, withdrawing the HUD application without prior notice to or consent by the Oliphant Parties, demanding priority for the bridge loan to which it was not entitled, negotiating directly with Henry under terms that cut the Oliphant Parties out of the deal, and by attempting to force the Oliphant Parties to transfer its prospective financial and non-economic gain in the Project to Henry.

116.    As a direct and legal result of Greystone's breaches of duties of due care owed to the Oliphant Parties, the Oliphant Parties have been damaged and injured in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Fiduciary Duty / Constructive Fraud)

117.    The Oliphant Parties incorporate the allegations of Paragraphs 1 through 116 as if fully restated herein.

118.    Greystone stands in a confidential and fiduciary relationship with the Oliphant Parties by virtue of the trust and confidence the Oliphant Parties reposed in Greystone through the Engagement Agreement, the business relationship, and Greystone's position as a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program.

119.    Greystone breached its fiduciary duties to the Oliphant Parties by failing to expedite processing, preparation and submission of the HUD application, by causing delay in the processing, preparation and submission of the HUD application, by making unsolicited derogatory statements about the Oliphant Parties and the Project to HUD representatives and others, by changing the terms of the bridge financing, by withdrawing the HUD application without prior notice to or consent by the Oliphant Parties, by demanding priority for the bridge loan to which they were not entitled, by negotiating directly with Henry under terms that cut the Oliphant Parties out of the deal, and by attempting to force the Oliphant Parties to transfer their prospective financial and non-economic gain in the Project to Henry.   These breaches of fiduciary duties are continuing.

120.    The Oliphant Parties were prejudiced by the foregoing breaches of duty in that they advanced funds and expended time and energy and incurred obligations in connection with the Project.  The Oliphant Parties stand to be further prejudiced by risking loss of prospective financial and non-economic gain from the Project.

121.    As a direct and legal result of the conduct of Greystone, the Oliphant Parties have been damaged and injured in an amount to be proven at trial.

122.    The conduct of Greystone was fraudulent, malicious and oppressive, and done for the specific purpose of interfering with the Oliphant Parties' efforts to complete the project and/or gaining control over the Oliphant Parties' monies and/or opportunities for Greystone's own use and benefit. Greystone also displayed reckless indifference to the Oliphant Parties as to the conduct alleged. The Oliphant Parties should recover punitive damages, in addition to actual damages, to make an example of and to punish Greystone.

### THIRD CLAIM FOR RELIEF
### (Intentional Interference with Prospective Economic Advantage)

123.    The Oliphant Parties incorporate the allegations of Paragraphs 1 through 122 as if fully restated herein.

124.    At all times material, the Oliphant Parties had an existing business relationship with the seller of the Apartment Building and with the HUD office in Oklahoma City.

125.    At all times material, the Oliphant Parties had a probability of future economic benefit from successful completion of the financing, rehabilitation and development of the Project.

126.    The past and continuing conduct of Greystone disrupted, delayed and interfered with the Oliphant Parties' prospective economic advantage and was wrongful in that Greystone delayed and failed to expedite the HUD application, changed terms of the deal at the last minute, and breached fiduciary duties to the Oliphant Parties. This conduct was substantially certain to result in interference with the Oliphant Parties' prospective economic advantage in the Project. Greystone knew of the Oliphant Parties' business relationship and prospective economic advantage.

127.    As a direct and legal result of the conduct of Greystone, the Oliphant Parties have been and continue to be damaged and injured in an amount to be proven at trial.

128. But for the disruption, delay and interference of Greystone, it is reasonably probable that the Oliphant Parties would have realized the anticipated prospective economic advantage from the Project.

129. The conduct of Greystone was fraudulent, malicious and oppressive in that Greystone was guilty of reckless indifference towards the Oliphant Parties, acted willfully and knowingly in the manner in which it torpedoed the Project and the Oliphant Parties' HUD application and the tax-exempt bond issue, undertook separate negotiations with Henry to cut out the Oliphant Parties, and maliciously transmitted inaccurate and misleading disparaging material about the Oliphant Parties as described above. The Oliphant Parties should recover punitive damages, in addition to actual damages, to make an example of and to punish Greystone.

### FOURTH CLAIM FOR RELIEF
### (Negligent Interference with Prospective Economic Advantage)

130. The Oliphant Parties incorporate the allegations of Paragraphs 1 through 129 as if fully restated herein.

131. At all times material, Greystone owed the Oliphant Parties a duty of due care as alleged above.

132. Greystone breached that duty by wrongfully disrupting, delaying and interfering with the Oliphant Parties' prospective economic advantage, in delaying and failing to expedite the HUD application, changing terms of the deal at the last minute, breaching their fiduciary duties to the Oliphant Parties, and maligning the Oliphant Parties and the Project to the Oklahoma County Finance Authority and others, as described above.

133. The conduct of Greystone in disrupting, delaying and interfering with the Oliphant Parties' opportunity to complete the Project, did and continues to foreseeably disrupt and interfere with the Oliphant Parties' prospective economic advantage in the Project. As a

direct and legal result of such conduct the Oliphant Parties have been damaged and injured in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Anticipatory Breach)

134.    The Oliphant Parties incorporate the allegations of Paragraphs 1 through 133 as if fully restated.

135.    The Oliphant Parties and Greystone entered into a series of written agreements (including but not limited to the Engagement Agreement) to accomplish the financing for the acquisition and rehabilitation of the Project.

136.    Greystone has expressly and unequivocally repudiated those contracts by stating that it will not further perform, by stating that it is "out" of the deal unless the Oliphant Parties provides proofs and assurances to which Greystone is not entitled, by refusing to rescind the August 21 notice of default, and by sending the September 18 notice of acceleration.

137.    The Oliphant Parties are ready, willing and able to perform under the agreements but for Greystone's repudiation and anticipatory breach.

138.    As a direct and legal result of the breaches of Greystone, the Oliphant Parties have been damaged and injured in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

139.    The Oliphant Parties incorporate the allegations of Paragraphs 1 through 138 as if fully restated.

140.    The Oliphant Parties and Greystone entered into a series of written agreements (including but not limited to the Engagement Agreement) to accomplish the financing for the acquisition and rehabilitation of the Project.  Inherent in those agreements is an implied covenant

of good faith and fair dealing by each party not to do anything that will deprive the other party of the benefits of the contract.

141.    Greystone breached the implied covenants of good faith and fair dealing by interfering as alleged above and by failing to cooperate with the Oliphant Parties in the performance of the agreements.

142.    As a direct and legal result of the breaches of Greystone, the Oliphant Parties have been damaged and injured in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**(Declaratory Relief)**

143.    The Oliphant Parties incorporate the allegations of Paragraphs 1 through 142 as if fully restated herein.

144.    An actual controversy now exists between the Oliphant Parties and Greystone about their respective legal rights, duties and obligations under the bridge loan, the guarantees and the other agreements.  Greystone claims the bridge loan is in default and it has accelerated maturity of the bridge loan.  The Oliphant Parties dispute that the bridge loan is in default or has been accelerated.

145.    The Oliphant Parties desire a judicial determination and declaration of the parties' respective rights, duties and obligations as to (a) whether the bridge loan is in default and (b) whether maturity of the bridge loan has been accelerated.  In addition, the Oliphant Parties desire a judicial determination and declaration as to whether any payment is currently due and payable from the Oliphant Parties on the bridge loan, the guarantees and/or the related agreements and, if so, the amount thereof.

146.    The Oliphant Parties claim an offset against any amounts due Greystone under the bridge loan, the guarantees and the related agreements by reason of the Oliphant Parties' claims

for damages. Accordingly, the Oliphant Parties seek a judicial determination and declaration as to (a) whether the Oliphant Parties are entitled to offset any damages against any amounts due Greystone under the bridge loan, the guarantees and the related agreements and, if so, the amount of offset, and (b) whether any sum is currently due and payable on the bridge loan, the guarantees and/or the related agreements and, if so, the amount thereof.

*[Remainder of Page Intentionally Left Blank]*

## PRAYER FOR RELIEF

**WHEREFORE,** the Defendants and Counterclaimants request judgment dismissing the Amended Complaint with prejudice, together with an award of costs and reasonable attorneys' fees in defending against Plaintiff's claims, and further demands judgment on its Counterclaims against Counterclaim Defendant Greystone CDE, LLC and Additional Counterclaim Defendant Greystone Servicing Corporation, Inc. as follows:

For general damages, according to proof;

    A.    For general damages, according to proof;

    B.    For compensatory damages, according to proof;

    C.    For punitive and exemplary damages;

    D.    For any statutory damages or penalties available under statute;

    E.    For a judicial determination and declaration of the parties' respective rights, duties and obligations as to (1) whether the bridge loan is in default, (2) whether maturity of the bridge loan has been accelerated, (3) whether any payment is currently due and payable from Oliphant on the bridge loan, the guarantees and/or the related agreements and, if so, the amount thereof, (4) whether Oliphant is entitled to offset any damages against any amounts due any of Greystone under the bridge loan, the guarantees and the related agreements and, if so, the amount of offset, and (5) whether any sum is currently due and payable on the bridge loan, the guarantees and/or the related agreements and, if so, the amount thereof;

    F.    For reasonable attorney's fees;

    G.    For costs of suit; and

    H.    For such other and further relief as the Court deems just or proper.

Dated:   New York, New York
           March 3, 2008

                        Respectfully submitted,

                        AKERMAN SENTERFITT LLP

                        By: _____
                            Donald N. David  (DD 5222)
                            Brian A. Bloom  (BB 5722)
                            Jeremy Shure     (JS 0490)

                        335 Madison Avenue, 26th Floor
                        New York, New York 10017-4636
                        Telephone:  (212) 880-3800

                        *Attorneys for Defendants and Counterclaimants*

ECF

# U.S. District Court
## United States District Court for the Southern District of New York (Foley Square)
### CIVIL DOCKET FOR CASE #: 1:07-cv-08377-RPP
#### Internal Use Only

| | |
|---|---|
| Greystone CDE, LLC v. Sante Fe Pointe, L.P. et al | Date Filed: 09/26/2007 |
| Assigned to: Judge Robert P. Patterson | Jury Demand: None |
| Cause: 28:1332 Diversity-Breach of Contract | Nature of Suit: 140 Negotiable Instrument |
| | Jurisdiction: Diversity |

**Plaintiff**

**Greystone CDE, LLC**    represented by **Stephen M. Harnik**
Harnik Wilker & Finkelstein, LLP
Olympic Tower
645 Fifth Avenue
7th Floor
New York, NY 10022-5937
212-599-7575
Fax: 212-867-8120
Email: stephen@harnik.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen M. Harnik**
(See above for address)

V.

**Defendant**

**Sante Fe Pointe, L.P.**    represented by **Jeremy Adam Shure**
Ackerman Senterfitt
335 Madison Avenue, Suite 2600
New York, NY 10017
(212)880-3814
Fax: (212)-880-8965
Email: jeremy.shure@akerman.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sante Fe Pointe Management, LLC**                represented by **Jeremy Adam Shure**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


<u>Defendant</u>

**Rant LLC**                                       represented by **Jeremy Adam Shure**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


<u>Defendant</u>

**Theotis F. Oliphant**                            represented by **Jeremy Adam Shure**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


<u>Counter Defendant</u>

**Greystone Servicing Corporation,**              represented by **Stephen M. Harnik**
**Inc.**                                           Harnik Wilker & Finkelstein, LLP
                                                   645 Fifth Avenue
                                                   7th Floor
                                                   New York, NY 10022-5937
                                                   212-599-7575
                                                   Fax: 212-867-8120
                                                   Email: stephen@harnik.com
                                                   *LEAD ATTORNEY*


<u>ADR Provider</u>

**Greystone Servicing Corporation,**              represented by **Stephen M. Harnik**
**Inc.**                                           (See above for address)
                                                   *LEAD ATTORNEY*


<u>Counter Claimant</u>

**Sante Fe Pointe, L.P.**                          represented by **Jeremy Adam Shure**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


<u>Counter Claimant</u>

**Sante Fe Pointe Management, LLC**                represented by **Jeremy Adam Shure**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


<u>Counter Claimant</u>

**Rant LLC**                                       represented by **Jeremy Adam Shure**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*


<u>Counter Claimant</u>

**Theotis F. Oliphant**

represented by **Jeremy Adam Shure**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Greystone Servicing Corporation,
Inc.**

**Counter Defendant**

**Greystone CDE, LLC**

represented by **Stephen M. Harnik**
(See above for address)
*LEAD ATTORNEY*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/26/2007 | ❶1 | COMPLAINT against Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Filing Fee $ 350.00, Receipt Number 625166)Document filed by Greystone CDE, LLC.(mbe) Additional attachment(s) added on 10/5/2007 (Rodriguez, Tiffany). (Entered: 10/01/2007) |
| 09/26/2007 | ❶ | SUMMONS ISSUED as to Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (mbe) (Entered: 10/01/2007) |
| 09/26/2007 | ❶ | Magistrate Judge Douglas F. Eaton is so designated. (mbe) (Entered: 10/01/2007) |
| 09/26/2007 | ❶ | Case Designated ECF. (mbe) (Entered: 10/01/2007) |
| 09/26/2007 | ❶2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Greystone CDE, LLC.(mbe) Additional attachment(s) added on 11/16/2007 (Becerra, Maribel). (Entered: 10/01/2007) |
| 10/05/2007 | ❶3 | AMENDED COMPLAINT amending 1 Complaint, against Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. Document filed by Greystone CDE, LLC. Related document: 1 Complaint, filed by Greystone CDE, LLC. (jco) (Entered: 10/09/2007) |
| 10/24/2007 | ❶4 | AFFIDAVIT OF SERVICE of Summons and Amended Complaint, Complaint,. Sante Fe Pointe, L.P. served on 10/5/2007, answer due 10/25/2007; Sante Fe Pointe Management, LLC served on 10/5/2007, answer due 10/25/2007; Rant LLC served on 10/5/2007, answer due 10/25/2007; Theotis F. Oliphant served on 10/5/2007, answer due 10/25/2007. Service was made by Mail. Document filed by Greystone CDE, LLC. (Harnik, stephen) (Entered: 10/24/2007) |

| 10/25/2007 | ●5 | MEMO ENDORSEMENT on DEFAULT JUDGMENT, Application Denied. Plaintiff is directed to proceed by moving for entry of a default and giving notice of such motion to defendants. (Signed by Judge Robert P. Patterson on 10/25/07) (tro) (Entered: 10/26/2007) |
| --- | --- | --- |
| 11/05/2007 | ●6 | MOTION for Default Judgment as to *Defendants*. Document filed by Greystone CDE, LLC.Return Date set for 11/9/2007 at 10:00 AM. (Attachments: # 1 Supplement Declaration In Support of Motion# 2 Exhibit Ex. A to Declaration# 3 Exhibit Ex. B to Declaration# 4 Exhibit Ex.C to Declaration# 5 Exhibit Ex.D to Declaration# 6 Exhibit Ex. E to Declaration# 7 Exhibit Ex.F to Declaration# 8 Exhibit Ex. G to Declaration# 9 Affidavit Affidavit of Service# 10 Supplement Plaintiff's Memorandum of Law)(Harnik, stephen) (Entered: 11/05/2007) |
| 11/08/2007 | ●7 | NOTICE OF APPEARANCE by Jeremy Adam Shure on behalf of Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant (Shure, Jeremy) (Entered: 11/08/2007) |
| 11/08/2007 | ●8 | CROSS MOTION to Vacate 6 MOTION for Default Judgment as to *Defendants*. *Vacate Certificate of Service and Clerk's Certificate of Default*. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant.(Shure, Jeremy) (Entered: 11/08/2007) |
| 11/08/2007 | ●9 | DECLARATION of Donald N. David in Opposition re: 8 CROSS MOTION to Vacate 6 MOTION for Default Judgment as to *Defendants*. *Vacate Certificate of Service and Clerk's Certificate of Default*.CROSS MOTION to Vacate 6 MOTION for Default Judgment as to *Defendants*. *Vacate Certificate of Service and Clerk's Certificate of Default*., 6 MOTION for Default Judgment as to *Defendants*.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H)(Shure, Jeremy) (Entered: 11/08/2007) |
| 11/08/2007 | ●10 | MEMORANDUM OF LAW in Opposition re: 8 CROSS MOTION to Vacate 6 MOTION for Default Judgment as to *Defendants*. *Vacate Certificate of Service and Clerk's Certificate of Default*.CROSS MOTION to Vacate 6 MOTION for Default Judgment as to *Defendants*. *Vacate Certificate of Service and Clerk's Certificate of Default*., 6 MOTION for Default Judgment as to *Defendants*. *In Opposition to Plaintiff's Motion and In Support of Defendants' Cross-Motion to Vacate*. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 11/08/2007) |
| 11/08/2007 | ●11 | CERTIFICATE OF SERVICE of Notice of Special Appearance, Memorandum of Law In Opposition to Plaintiff's Motion for Default Judgment and In Support of Defendants' Cross-Motion to Vacate; Notice of Cross-Motion, Declaration of Donald N. David dated November 8, 2007 with exhibits annexed thereto. served on GREYSTONE CDE, LLC |

| | | on 11/08/2007. Service was made by ECF. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 11/08/2007) |
|---|---|---|
| 11/09/2007 | ❶12 | CERTIFICATE OF SERVICE of Declaration (with exhibits), Memorandum of Law in Opposition to Plaintiff's Motion for Default and in Support of Cross Motion to Vacate, the Notice of Special and Limited Appearance, and Notice of Cross Motion served on Stephen Harnik on November 9, 2007. Service was accepted by Stephen Harnik. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 11/09/2007) |
| 11/13/2007 | ❶ | ***NOTE TO ATTORNEY TO E-MAIL PDF. Note to Attorney Stephen M. Harnik for noncompliance with Section (3) of the S.D.N.Y. 3rd Amended Instructions For Filing An Electronic Case or Appeal and Section 1(d) of the S.D.N.Y. Procedures For Electronic Case Filing. E-MAIL the PDF for Document 2 Rule 7.1 Corporate Disclosure Statement to: case_openings@nysd.uscourts.gov. (lb) (Entered: 11/13/2007) |
| 11/14/2007 | ❶13 | RESPONSE in Opposition re: 6 MOTION for Default Judgment as to *Defendants. Supplemental Letter Brief As Per The Court's Direction*. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Attachments: # 1 Exhibit Exhibit "A"# 2 Exhibit Exhibit B# 3 Exhibit Exhibit C# 4 Exhibit Exhibit D# 5 Exhibit Exhibit E# 6 Exhibit Exhibit F)(Bloom, Brian) (Entered: 11/14/2007) |
| 11/15/2007 | ❶14 | SUPPLEMENTAL MEMORANDUM OF LAW in Support re: 6 MOTION for Default Judgment as to *Defendants*.. Document filed by Greystone CDE, LLC. (Harnik, stephen) (Entered: 11/15/2007) |
| 11/15/2007 | ❶15 | AFFIDAVIT OF SERVICE of Supplemental Memo of Law served on Defendants on November 14, 2007. Service was made by Fedex. Document filed by Greystone CDE, LLC. (Harnik, stephen) (Entered: 11/15/2007) |
| 11/15/2007 | ❶16 | SUPPLEMENTAL MEMORANDUM OF LAW in Support re: 6 MOTION for Default Judgment as to *Defendants. Cover Letter to Clerk*. Document filed by Greystone CDE, LLC. (Harnik, stephen) (Entered: 11/15/2007) |
| 11/15/2007 | ❶17 | SUPPLEMENTAL MEMORANDUM OF LAW in Support re: 6 MOTION for Default Judgment as to *Defendants. Cover Letter to Judge Patterson*. Document filed by Greystone CDE, LLC. (Harnik, stephen) (Entered: 11/15/2007) |
| 11/28/2007 | ❶18 | TRANSCRIPT of proceedings held on 11/9/07 before Judge Judge Robert P. Patterson. (jbe) (Entered: 11/28/2007) |
| 11/28/2007 | ❶19 | TRANSCRIPT of proceedings held on 10/19/07 before Judge Judge Gerard E. Lynch. (jbe) (Entered: 11/28/2007) |

| 11/30/2007 | ●20 | OPINION AND ORDER. Granting 8 CROSS MOTION to Vacate service of the complaint (Doc. no. 1) and amended complaint (Doc. no. 3) and to strike the clerk's certificate of default and the affidavit of service; Denying 6 MOTION for Default Judgment as to Defendants. (Signed by Judge Robert P. Patterson on 11/29/07) Copies forwarded by Chambers.(djc) (Entered: 11/30/2007) |
|---|---|---|
| 12/05/2007 | ●21 | ENDORSED LETTER addressed to Judge Robert P. Patterson, Jr. from Stephen M. Harnik dated 12/5/07 re: Counsel writes to request adjournment of the conference until 12/11/07 at 9:30 a.m. ENDORSEMENT: Application granted. So Ordered. ( Case Management Conference set for 12/11/2007 at 09:30 AM before Judge Robert P. Patterson.) (Signed by Judge Robert P. Patterson on 12/5/07) (jco) (Entered: 12/06/2007) |
| 12/11/2007 | ● | Minute Entry for proceedings held before Judge Robert P. Patterson: Interim Pretrial Conference held on 12/11/2007. Schedule set: answer complaint by 12/23/07; rule 26 compliance by 1/8/08; discovery 4/11/08; pretrial order by 4/25/08 and trial 5/12/08 at 4 p.m. (dle) (Entered: 01/07/2008) |
| 12/13/2007 | ●22 | SCHEDULING ORDER: answer to complaint by 12/23/2007. Rule 26 compliance by 1/8/08. All Discovery due by 4/11/2008. Pretrial Order due by 4/25/2008. Trial date is scheduled for 5/12/2008 at 09:30 AM before Judge Robert P. Patterson. (Signed by Judge Robert P. Patterson on 12/11/07) (pl) (Entered: 12/13/2007) |
| 12/20/2007 | ●23 | ENDORSED LETTER addressed to Judge Robert P. Patterson from Donald N. David dated 12/19/07 re: Accordingly, and on the consent of the plaintiff's counsel, we respectfully request an extension of time until January 7, 2008 to respond to the complaint. ENDORSEMENT: Application GRANTED. So Ordered. (Signed by Judge Robert P. Patterson on 12/20/07) (js) (Entered: 12/20/2007) |
| 01/07/2008 | ●24 | MOTION to Stay re: 3 Amended Complaint, 1 Complaint, *and Entire Action*. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant.(Shure, Jeremy) (Entered: 01/07/2008) |
| 01/07/2008 | ●25 | DECLARATION of Brian A. Bloom in Support re: 24 MOTION to Stay re: 3 Amended Complaint, 1 Complaint, *and Entire Action*.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Attachments: # 1 Exhibit A, 1 of 8, # 2 Exhibit A, 2 of 8, # 3 Exhibit A, 3 of 8, # 4 Exhibit A, 4 of 8, # 5 Exhibit A, 5 of 8, # 6 Exhibit A, 6 of 8, # 7 Exhibit A, 7 of 8, # 8 Exhibit A, 8 of 8, # 9 Exhibit B, # 10 Exhibit C, 1 of 3, # 11 Exhibit C, 2 of 3, # 12 Exhibit C, 3 of 3, # 13 Exhibit D, # 14 Exhibit E, # 15 Exhibit F, # 16 Exhibit G)(Shure, Jeremy) (Entered: 01/07/2008) |
| 01/07/2008 | ●26 | MEMORANDUM OF LAW in Support re: 24 MOTION to Stay re: 3 Amended Complaint, 1 Complaint, *and Entire Action*.. Document filed by |

| | | |
|---|---|---|
| | | Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 01/07/2008) |
| 01/07/2008 | ●27 | CERTIFICATE OF SERVICE of Notice of Motion to Stay, Memorandum of Law In Support of Motion to Stay, Declaration of Brian A. Bloom in support of Motion to Stay with Exhibits A through G annexed thereto served on Greystone CDE, LLC on 01/07/2008. Service was made by ECF and Federal Express Overnight. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 01/07/2008) |
| 01/08/2008 | ●28 | RULE 26 DISCLOSURE.Document filed by Greystone CDE, LLC.(Harnik, Stephen) (Entered: 01/08/2008) |
| 01/08/2008 | ●29 | AFFIDAVIT OF SERVICE of Initial Disclosure Rule 26 served on Santa Fe Pointe, L.P. et al on January 8, 2008. Service was made by Mail. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 01/08/2008) |
| 01/22/2008 | ●30 | CROSS MOTION for Entry of Default as to Defendants. Document filed by Greystone CDE, LLC. Return Date set for 2/13/2008 at 04:00 PM.(Harnik, Stephen) (Entered: 01/22/2008) |
| 01/22/2008 | ●31 | DECLARATION of Stephen M. Harnik, Esq. in Support re: 30 CROSS MOTION for Entry of Default as to Defendants.. Document filed by Greystone CDE, LLC. (Attachments: # 1 Exhibit Ex.A, # 2 Exhibit Ex's B And C, # 3 Exhibit Ex's D and E, # 4 Exhibit Ex's F, G and H)(Harnik, Stephen) (Entered: 01/22/2008) |
| 01/22/2008 | ●32 | MEMORANDUM OF LAW in Support re: 30 CROSS MOTION for Entry of Default as to Defendants.. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 01/22/2008) |
| 01/22/2008 | ●33 | AFFIDAVIT OF SERVICE of Notice of Cross-Motion served on Defendants on January 22, 2008. Service was made by Mail. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 01/22/2008) |
| 01/28/2008 | ●34 | ENDORSED LETTER addressed to Judge Robert W. Patterson from Donald N. David dated 1/24/08 re: Defendants requests that both (i) Defendants' Reply to Plaintiffs Opposition to the motion to stay and (ii) Defendants opposition to the Cross-motion be served not later than 2/5/08. ENDORSEMENT: Application denied. Opposing papers should be filed separately and in proper time. So Ordered. (Signed by Judge Robert P. Patterson on 1/25/07) (pl) (Entered: 01/28/2008) |
| 01/29/2008 | ●35 | REPLY MEMORANDUM OF LAW in Support re: 24 MOTION to Stay re: 3 Amended Complaint, 1 Complaint, *and Entire Action*.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 01/29/2008) |
| 01/29/2008 | ●36 | CERTIFICATE OF SERVICE of REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO STAY served on |

| | | GREYSTONE CDE, LLC on 01/29/2008. Service was made by ECF AND FEDERAL EXPRESS. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 01/29/2008) |
|---|---|---|
| 02/05/2008 | ●37 | MEMORANDUM OF LAW in Opposition re: 30 CROSS MOTION for Entry of Default as to Defendants.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 02/05/2008) |
| 02/05/2008 | ●38 | DECLARATION of Jeremy A. Shure in Opposition re: 30 CROSS MOTION for Entry of Default as to Defendants.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Attachments: # 1 Exhibit A)(Shure, Jeremy) (Entered: 02/05/2008) |
| 02/05/2008 | ●39 | CERTIFICATE OF SERVICE of Opposition to Plaintiff's Cross Motion for Default, Declaration of Jeremy A. Shure and Exhibit thereto served on Greystone CDE, LLC on February 5, 2008. Service was made by Mail. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 02/05/2008) |
| 02/12/2008 | ●40 | REPLY MEMORANDUM OF LAW in Support re: 30 CROSS MOTION for Entry of Default as to Defendants.. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 02/12/2008) |
| 02/12/2008 | ●41 | AFFIDAVIT OF SERVICE of Plaintiff's Reply Memo of Law served on Defendants on February 12, 2008. Service was made by Mail. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 02/12/2008) |
| 02/14/2008 | ● | Minute Entry for proceedings held before Judge Robert P. Patterson: Oral Argument held and concluded on 2/14/2008 (pl) (Entered: 02/28/2008) |
| 02/20/2008 | ●42 | OPINION AND ORDER # 95730: Whether there is any merit to Defendants' claims in California can be determined by the California Court, but Defendants here should not be in the position of spending the remaining proceeds of the bridge loan pursuing the action. Defendants' motion for a stay (Doc. No.24) is denied. Plaintiff's motion to enter default judgment (Doc. No. 30) is denied, and Plaintiff's motion to strike Defendants' personal jurisdiction defense (Doc. 30) is denied, since such a defense has not been raised. Defendants are to answer the complaint or otherwise respond in ten (10) days of this opinion. The parties and their principal counsel are to appear in Court on Thursday, February 28, 2008, at 9:30 AM to discuss settlement so the legal fees in this case and the California case will not result in further injury to both parties. So Ordered (Signed by Judge Robert P. Patterson on 2/20/08) (js) (Entered: 02/21/2008) |
| 02/25/2008 | ●43 | ENDORSED LETTER addressed to Judge Robert A. Patterson from Brian A. Bloom dated 2/22/08 re: counsel for defendants request that the |

| | | Court order Greystone's California counsel to appear in person at the Settlement Conference on 2/28/08. ENDORSEMENT: Application granted. The Courts' order contemplated that counsel for Greystone Servicing and Greystone CDE LLC in the California action be present at the conference scheduled for 2/28/08 at 9:30 a.m. Unless counsel acquainted with all the facts in both the California action and the New York action are present, an overall settlement is unlikely. The Court would consider an adjourned date mutually convenient to the parties. (Signed by Judge Robert P. Patterson on 2/22/08) (dle) Modified on 3/20/2008 (dle). (Entered: 02/25/2008) |
|---|---|---|
| 02/26/2008 | ● | Minute Entry for proceedings held before Judge Robert P. Patterson: Telephone Pretrial Conference held on 2/26/2008. (pl) (Entered: 03/03/2008) |
| 03/03/2008 | ●44 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. NO Corporate Parent. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC.(Shure, Jeremy) (Entered: 03/03/2008) |
| 03/03/2008 | ●45 | ANSWER to Amended Complaint., COUNTERCLAIM against Greystone Servicing Corporation, Inc., Greystone CDE, LLC. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. Related document: 3 Amended Complaint filed by Greystone CDE, LLC.(Shure, Jeremy) (Entered: 03/03/2008) |
| 03/03/2008 | ●46 | CERTIFICATE OF SERVICE of ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS served on GREYSTONE CDE, LLC on MARCH 3, 2008. Service was made by FEDERAL EXPRESS OVERNIGHT. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 03/03/2008) |
| 03/03/2008 | ●47 | MOTION to Transfer Case. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant.(Shure, Jeremy) (Entered: 03/03/2008) |
| 03/03/2008 | ●48 | MEMORANDUM OF LAW in Support re: 47 MOTION to Transfer Case.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 03/03/2008) |
| 03/03/2008 | ●49 | DECLARATION of DONALD N. DAVID in Support re: 47 MOTION to Transfer Case.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Attachments: # 1 Exhibit A to the David Decl., # 2 Exhibit B to the David Decl., # 3 Exhibit C to the David Decl., # 4 Exhibit D to the David Decl., # 5 Exhibit E to the David Decl., # 6 Exhibit F to the David Decl., # 7 Exhibit G to the David Decl.)(Shure, Jeremy) (Entered: 03/03/2008) |
| 03/03/2008 | ●50 | CERTIFICATE OF SERVICE of NOTICE OF MOTION TO TRANSFER, MEMORANDUM OF LAW IN SUPPORT OF MOTION |

| | | TO TRANSFER, AND DECLARATION OF DONALD N. DAVID AND EXHIBITS ANNEXED THERETO served on GREYSTONE CDE, LLC on March 3, 2008. Service was made by FEDERAL EXPRESS. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 03/03/2008) |
|---|---|---|
| 03/03/2008 | ●51 | CERTIFICATE OF SERVICE of RULE 7.1 CORPORATE DISCLOSURE STATEMENT served on GREYSTONE CDE, LLC on March 3, 2008. Service was made by FEDERAL EXPRESS. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 03/03/2008) |
| 03/10/2008 | ●52 | TRANSCRIPT of proceedings held on 2/14/08 before Judge Robert P. Patterson. (ama) (Entered: 03/10/2008) |
| 03/17/2008 | ●53 | MEMORANDUM OF LAW in Opposition re: 47 MOTION to Transfer Case.. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 03/17/2008) |
| 03/17/2008 | ●54 | MEMORANDUM OF LAW in Opposition re: 47 MOTION to Transfer Case.. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 03/17/2008) |
| 03/17/2008 | ●55 | MOTION to Dismiss. Document filed by Greystone Servicing Corporation, Inc., Greystone CDE, LLC. Responses due by 4/1/2008 Return Date set for 4/17/2008 at 04:00 PM.(Harnik, Stephen) (Entered: 03/17/2008) |
| 03/17/2008 | ●56 | DECLARATION of Stephen M. Harnik in Support re: 55 MOTION to Dismiss., 47 MOTION to Transfer Case.. Document filed by Greystone Servicing Corporation, Inc., Greystone CDE, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D & E)(Harnik, Stephen) (Entered: 03/17/2008) |
| 03/17/2008 | ●57 | MOTION for Summary Judgment. Document filed by Greystone CDE, LLC. Responses due by 4/1/2008 Return Date set for 4/17/2008 at 04:00 PM.(Harnik, Stephen) (Entered: 03/17/2008) |
| 03/17/2008 | ●58 | AFFIDAVIT OF SERVICE of Notice of Cross-Motion, Memo of Law in Opposition to the Defendants' Motion to Transfer Venue and Support of the Cross-Motion, Harnik Declaration & L.C.R. 56.1 Statement served on Santa Fe Pointe, LP et al on MArch 17, 2008. Service was made by Mail. Document filed by Greystone Servicing Corporation, Inc., Greystone CDE, LLC. (Harnik, Stephen) (Entered: 03/17/2008) |
| 03/20/2008 | ●59 | ENDORSED LETTER addressed to Judge Robert P. Patterson from Jeremy A. Shure dated 3/19/08 re: The Oliphant Parties do not object to Greystone's request for an extension until 4/15/08 to file a reply in further support of their summary judgment motion, so long as the Oliphant Parties are also given the same extension and are granted leave to file their opposition not later than 4/8/08. ENDORSEMENT: Application granted., |

| | | Set Deadlines/Hearing as to 57 MOTION for Summary Judgment:( Responses due by 4/8/2008, Replies due by 4/15/2008.) (Signed by Judge Robert P. Patterson on 3/20/08) (tro) (Entered: 03/20/2008) |
|---|---|---|
| 03/24/2008 | 60 | REPLY MEMORANDUM OF LAW in Support re: 47 MOTION to Transfer Case.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 03/24/2008) |
| 03/24/2008 | 61 | DECLARATION of Donald N. David in Support re: 47 MOTION to Transfer Case.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Attachments: # 1 Exhibit "A" to the David Declaration, # 2 Exhibit "B" to the David Declaration, # 3 Exhibit "C" to the David Declaration, # 4 Exhibit "D" to the David Declaration, # 5 Exhibit "E" to the David Declaration, # 6 Exhibit "F" to the David Declaration)(Shure, Jeremy) (Entered: 03/24/2008) |
| 03/24/2008 | 62 | CERTIFICATE OF SERVICE of REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO TRANSFER VENUE AND DECLARATION OF DONALD N. DAVID IN SUPPORT THEREOF WITH EXHIBITS ANNEXED THERETO. served on STEPHEN HARNIK, ESQ., Counsel to GREYSTONE CDE, LLC and GREYSTONE SERVICING CORPORATION, INC. on March 24, 2008. Service was made by ECF and FEDERAL EXPRESS. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 03/24/2008) |
| 03/25/2008 | 63 | ENDORSED LETTER addressed to Judge Robert P. Patterson from Stephen Harnik dated 3/20/08 re: Request that cross motion relates to docket #'s 55 and 56 as well. ENDORSEMENT: No objections having been filed, the cross motion will be heard on the same schedules. (Signed by Judge Robert P. Patterson on 3/25/08) (cd) (Entered: 03/26/2008) |
| 04/03/2008 | 64 | ENDORSED LETTER addressed to Judge Robert P. Patterson from Jeremy A. Shure dated 4/2/08 re: defendant requests a two week extension of time to file their opposition to Greystone's motion for summary judgment and for dismissal, such that oppositions are due on 4/22/08 and replies are due on 4/29/08. ENDORSEMENT: So Ordered. (Signed by Judge Robert P. Patterson on 4/3/08) (pl) (Entered: 04/03/2008) |
| 04/22/2008 | 65 | MEMORANDUM OF LAW in Opposition re: 57 MOTION for Summary Judgment., 55 MOTION to Dismiss.. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Attachments: # 1 Appendix 1 of 4, # 2 Appendix 2 of 4, # 3 Appendix 3 of 4, # 4 Appendix 4 of 4)(Shure, Jeremy) (Entered: 04/22/2008) |
| 04/22/2008 | 66 | COUNTER STATEMENT TO Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 04/22/2008) |

| 04/22/2008 | ○67 | CERTIFICATE OF SERVICE of MEMORANDUM OF LAW IN OPPOSITION TO GREYSTONE'S MOTION FOR SUMMARY JUDGMENT AND TO DISMISS COUNTERCLAIMS; RULE 56.1 COUNTERSTATEMENT AND OBJECTION served on GREYSTONE CDE, LLC and GREYSTONE SERVICING CORPORATION, INC. on 04/22/2008. Service was made by FEDERAL EXPRESS OVERNIGHT. Document filed by Sante Fe Pointe, L.P., Sante Fe Pointe Management, LLC, Rant LLC, Theotis F. Oliphant. (Shure, Jeremy) (Entered: 04/22/2008) |
|---|---|---|
| 04/29/2008 | ○68 | REPLY MEMORANDUM OF LAW in Support re: 57 MOTION for Summary Judgment., 55 MOTION to Dismiss.. Document filed by Greystone Servicing Corporation, Inc., Greystone CDE, LLC. (Harnik, Stephen) (Entered: 04/29/2008) |
| 04/29/2008 | ○69 | DECLARATION of Stephen M. Harnik in Support re: 57 MOTION for Summary Judgment., 55 MOTION to Dismiss.. Document filed by Greystone Servicing Corporation, Inc., Greystone CDE, LLC. (Attachments: # 1 Exhibit F & G, # 2 Exhibit H, # 3 Exhibit I & J, # 4 Exhibit K, L & M)(Harnik, Stephen) (Entered: 04/29/2008) |
| 04/29/2008 | ○70 | AFFIDAVIT OF SERVICE of Plaintiff's Reply Memo of Law & Harnik Supplemental Declaration served on Santa Fe Pointe, L.P. et al on April 29, 2008. Service was made by Mail. Document filed by Greystone Servicing Corporation, Inc., Greystone CDE, LLC. (Harnik, Stephen) (Entered: 04/29/2008) |
| 05/13/2008 | ○ | MEMORANDUM TO THE DOCKET CLERK: Argument/Hearing begun and concluded on 5/13/08. Contested Issue: Yes. (ja) (Entered: 05/15/2008) |
| 05/19/2008 | ○71 | MOTION for Reconsideration re; 57 MOTION for Summary Judgment.. Document filed by Greystone CDE, LLC.(Harnik, Stephen) (Entered: 05/19/2008) |
| 05/19/2008 | ○72 | MEMORANDUM OF LAW in Support re: 71 MOTION for Reconsideration re; 57 MOTION for Summary Judgment... Document filed by Greystone CDE, LLC. (Attachments: # 1 Appendix Part 1.Transcript of oral argument May 13, 2008, # 2 Appendix Part 2.Transcript of oral argument May 13, 2008, # 3 Appendix Not Officially Reported Case)(Harnik, Stephen) (Entered: 05/19/2008) |
| 05/19/2008 | ○73 | AFFIDAVIT OF SERVICE of Notice of Motion for Reconsideration & Memo of Law in Support of Motion served on Santa Fe Pointe, L.P. et al on May 19, 2008. Service was made by Mail. Document filed by Greystone CDE, LLC. (Harnik, Stephen) (Entered: 05/19/2008) |
| 05/20/2008 | ○74 | ORDER that after hearing argument on Plaintiff's motions, the Court ruled first to deny the motion to dismiss for failure to properly serve. The Court also denied Plaintiff's motion to dismiss for failure to obtain leave to file counterclaims against Greystone Servicing. The Court also denied |

| | | Plaintiff's motion for a more definite statement with respect to whether Defendants' counterclaims against Greystone CDE, LLC and Greystone Servicing Corporation. The Court also denied Plaintiff's motion for summary judgment without prejudice. The Court granted Defendants' motion to transfer to the USDC for the Northern District of California in the interests of justice. The Clerk is ordered to transfer this case to the USDC for the Northern District of California. (Signed by Judge Robert P. Patterson on 5/19/08) (dle) (Entered: 05/20/2008) |
| 05/22/2008 | ●75 | ORDER: Plaintiff's motion 71 for Reconsideration and a stay is hereby denied, and the Clerk remains under order to transfer this case to the United States District Court for the Northern District of California. Defendants request for attorney's fees and costs is denied because the attorney's fees incurred in writing Defendants letter of May 20, 2008 would be de minimus. (Signed by Judge Robert P. Patterson on 5/21/2008) Copies Mailed By Chambers.(jfe) (Entered: 05/22/2008) |

A CERTIFIED COPY
J. MICHAEL McMAHON,                    CLERK
BY
      DEPUTY CLERK