1  Mark D. Kemple (State Bar No. 145219)
   mkemple@jonesday.com
2  Erik K. Swanholt (State Bar No. 198042)
   ekswanholt@jonesday.com
3  JONES DAY
   555 South Flower Street
4  Fiftieth Floor
   Los Angeles, CA  90071-2300
5  Telephone:     (213) 489-3939
   Facsimile:     (213) 243-2539
6
   Attorneys for Defendants
7  GREYSTONE SERVICING CORPORATION, INC.
   AND GREYSTONE CDE, LLC
8
   Eric J. Farber, Esq
9  efarber@pinnaclelawgroup.com
   William Schofield, Esq.
10 wschofield@pinnaclelawgroup.com
   PINNACLE LAW GROUP LLP
11 425 California St., Suite 1800
   San Francisco, CA  94104
12 Telephone:     (415) 394-5700
   Facsimile:     (415) 394-5003
13
   Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GREYSTONE SERVICING<br>CORPORATION, INC., et al.,<br><br>　　　　Defendants. | **Case No. C07-05454 MMC**<br><br>THIRD JOINT CASE MANAGEMENT STATEMENT<br><br>Date:　　August 22, 2008<br>Time:　　10:30 a.m.<br>Court:　　7 (19th Floor) |
| GREYSTONE CDE LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SANTA FE POINTE, LP, et al.,<br><br>　　　　Defendants. | **Case No. C08-02756 MMC**<br><br>FIRST JOINT CASE MANAGEMENT STATEMENT<br><br>Date:　　August 22, 2008<br>Time:　　10:30 a.m.<br>Court:　　7 (19th Floor) |

Joint Case Management Statement
C07-05454 MMC & C08-02756 MMC

LAI-2968476v3

1  Pursuant to the Court's Orders entered June 24, 2008 (doc. # 76) in Case No. C07-05454
2  MMC, and (doc. #14) in Case No. C08-02756 MMC, and Civil Local Rule 16-9, Plaintiffs Santa
3  Fe Pointe, LP ("SFP"), Santa Fe Management, LLC ("SFM"), Theotis F. Oliphant ("Oliphant"),
4  and Rant, LLC ("Rant") and Defendants Greystone Servicing Corporation, Inc. ("Greystone
5  Servicing") and Greystone CDE, LLC ("Greystone CDE") hereby jointly submit this Third Case
6  Management Statement in Case No. C07-05454 MMC, and First Case Management Statement in
7  Case No. C08-02756 MMC.

8  Given that these cases are intertwined, the parties request that (1) the later-filed New York
9  action recently transferred to this Court (Case No. C08-02756 MMC) now be consolidated with the
10 prior-filed action (Case No. C07-05454 MMC), and (2) that the parties move forward in this
11 consolidated action with Greystone CDE's claims pled in the transferred New York Action (Case
12 No. C08-02756 MMC) and SFP, SFM, Oliphant and Rant's claims pled in Case No. C07-05454
13 MMC deemed the operative pleadings.

14 Greystone CDE and Greystone Servicing agree that SFP, SFM, Oliphant and Rant may
15 occupy the "plaintiffs" seat in the courtroom.

16 The parties are labeled herein (*e.g.*, "Plaintiff" or "Defendant") as they are identified in the
17 Case No. C07-05454 MMC.

18 **1.  JURISDICTION AND SERVICE:**

19 Plaintiffs filed this case in state court (Alameda County) on September 7, 2007, and
20 Defendants removed it to this Court on October 25, 2007 based on diversity jurisdiction, 28 U.S.C.
21 § 1332.  Plaintiffs concede diversity jurisdiction and Defendants concede personal jurisdiction.

22 **2.  FACTS:**

23 **Plaintiffs' Statement**.  Plaintiffs allege torts and breaches of contract arising out of
24 Plaintiffs' project to acquire and rehabilitate an apartment building in Oklahoma City as low
25 income housing special funding insured by the FHA's Office of Housing and Urban Development
26 ("HUD").  The Complaint alleges that Defendant Greystone Servicing (a HUD-approved
27 underwriter) was a fiduciary that mishandled the Plaintiffs' HUD application, unilaterally and
28 wrongfully withdrew it from HUD consideration, and sabotaged the project.  Moreover, that

Greystone Servicing forced Plaintiffs into accepting a bridge loan from an affiliated Greystone entity (Defendant Greystone CDE) in an inadequate amount and on vastly different (and inferior) terms than initially promised and later wrongly declared the loan in default.

Plaintiff Oliphant resides in Contra Costa County, California and is the managing agent of Rant, which operates out of Contra Costa County. In August 2006, Oliphant undertook to acquire and rehabilitate a 224-unit apartment building in Oklahoma City (the "Santa Fe Pointe Project" or the "Project") as a developer under HUD's Low Income Housing program. The Federal Government encourages private developers, through federally-insured loan incentives, to renovate and maintain housing for low income tenants. This was to be such a project. Oliphant formed Santa Fe Pointe, LP ("SFP"), an Oklahoma limited partnership, as the entity that would acquire the apartment complex, rehabilitate it, and be the borrower on the HUD-insured loan.

HUD does not interact directly with the developer under the Low Income Housing program. Rather, it requires the developer to retain a HUD-approved underwriter, a financial entity that acts as the sole intermediary between the developer and HUD, preparing the HUD application materials, commissioning any third party reports needed to support the underwriting analysis, and facilitating the timely approval of application and financing. In early September 2006, Oliphant retained Greystone Servicing, through a written agreement, to act in that capacity, as a fiduciary who would serve as Oliphant's exclusive agent in the HUD application process.

Aside from the HUD-insured loan, financing for the Santa Fe Pointe project would come in part in the form of tax-exempt bonds issued by Oklahoma local or state agencies. At about the same time Oliphant engaged Greystone Servicing, he also engaged an investment bank underwriter to sell tax exempt bonds. The bond financing was required to close by December 20, 2006 or the tax-exempt bond allocation awarded for the Santa Fe Pointe Project would expire, so the HUD application had to be completed by November 2006.

By late October 2006, however, it was apparent that Greystone Servicing was behind schedule and would be unable timely to complete the HUD application. To protect the project, Greystone Servicing agreed—through a written term sheet—to extend a non-recourse bridge loan of more than $4 million to be used by Oliphant (a) to purchase the real estate at the Santa Fe Pointe

1  Project and (b) to pay for timely issuance of the tax-exempt bonds. The loan would be placed
2  through Defendant Greystone CDE.

3  The loan actually extended, however, was quite different. Shortly before the December 20
4  tax-exempt bond issue deadline, Greystone presented Oliphant with loan documents for only a
5  $500,000 maximum bridge loan, which would allow Oliphant to cover the bond issuance fees but
6  not allow him to purchase the Santa Fe Pointe Project property. Moreover, the loan documents
7  also required Oliphant and his spouse to personally guarantee the bridge loan, even though the
8  term sheet said financing would be non-recourse. Oliphant had no choice but to accept and sign
9  the loan documents as presented on a "take it or leave it" basis. When he was presented with the
10 documents, more than $250,000 in bond issuance costs had already been incurred because the tax-
11 exempt bonds had been sold.

12 For reasons to be developed in discovery, Greystone Servicing waited to submit Oliphant's
13 application to HUD for yet another three months to mid-March 2007. Oliphant claims numerous
14 acts of misconduct by Greystone Servicing that placed the HUD application in jeopardy. On
15 August 9, 2007, Greystone Servicing unilaterally—without prior notice to or approval from
16 Oliphant—withdrew the HUD loan application. This placed at risk over $7 million in tax exempt
17 bond proceeds, and caused the seller of the underlying property to terminate negotiations with
18 Oliphant about extending the close date for purchasing that property.

19 In late August 2007, Greystone told Oliphant it was declaring the bridge loan in default,
20 even though no financial default existed. It demanded that Oliphant allow a third party to take
21 over the entire Project on unfavorable terms and that Oliphant sign a covenant not to sue. Oliphant
22 declined and filed suit in Alameda County Superior Court on September 7, 2007.

23 **Defendants' Statement**. Defendants anticipate that the following will be established. This
24 matter arises out of Plaintiffs failed pursuit of the development of a multi-million dollar Low
25 Income Housing Tax Credit project located in Oklahoma City (the "Santa Fe Pointe Project" or the
26 "Project"), for which Plaintiffs obtained $500,000 in bridge financing from Greystone CDE.

27 On September 7, 2006, Defendant Greystone Servicing entered into an Engagement
28 Agreement with Plaintiff SFP (acting through Plaintiff Oliphant) to process an application for a

mortgage loan on the Project for submission to HUD under its Multifamily Accelerated Processing ("MAP") for approval of HUD mortgage insurance under Section 221(d)(4) of the National Housing Act.

Between September and November of 2006, several significant outstanding issues stood in the way of presenting a complete underwriting package to HUD. For example, Plaintiff's tax credit syndicator and equity investor, National Equity Fund, Inc., decided not to move forward with Plaintiff and backed out of the project, and thereafter Plaintiff was unable to find a replacement tax credit syndicator to provide the necessary equity investment required for approval of the HUD-insured mortgage. Further, Plaintiff SFP consistently failed to meet Greystone Servicing's numerous requests to provide basic information and materials necessary for completion of the underwriting process and submission of the HUD application. The final plans and a cost estimate for the Project, for example, were supposed to have been received by the end of October of 2006. The final plans were not received from Plaintiff SFP until November 13, 2006, and even then were not accompanied by a cost estimate.

In November of 2006, Oliphant requested and was provided with a term sheet for a non-recourse bridge loan from Defendant Greystone CDE in the amount of $4,348,400 (approximately 85% of the total acquisition costs for the Project). Greystone CDE said it would be amenable to the loan if the Plaintiffs supplied the remaining 15% of the total acquisition costs. A term sheet of the proposed non-recourse bridge loan was provided to Plaintiff SFP through Oliphant. Plaintiff, however, balked at investing any of its own money in the Project, and expressly rejected this proposed loan. Instead, on December 5, 2006, Oliphant forwarded a signed term sheet for a different Bridge Loan in the amount of $500,000, subject to personal guarantee by Oliphant.

Due to a looming December deadline on the bond allocation, Greystone Servicing urged Plaintiff SFP to reapply for a new bond allocation *the following year* after resolving the other outstanding issues affecting the HUD application, such as the lack of a tax credit syndicator, because failure to complete those requirements and close on the HUD-insured mortgage loan in a timely manner would result in forfeiture of the bond issuance. This was because the collateral for the bond issuance was to be ultimately secured by the HUD loan for both its principal and interest

payments, and, as Greystone Servicing explained to Plaintiff SFP, obtaining a bond allocation in 2007 would have been less difficult than obtaining the necessary HUD approval in 2006 under those circumstances.

Plaintiff SFP and Oliphant rejected Greystone Servicing's advice. Instead:

(1) without having secured any bridge funding for the balance of the acquisition costs for the Project,

(2) against Greystone Servicing's recommendation, and

(3) in spite of Oliphant's admission that he knew in November that, given his delays, Plaintiff's HUD application could not be submitted until sometime in 2007,

they approved the sale of tax-exempt bonds on December 12, 2006 by Plaintiff's investment bank to institutional investors (in escrow), thereby incurring approximately $251,000 in bond issuance costs.

Having elected to incur that debt in 2006 against Greystone Servicing's recommendation, Plaintiff SFP and Oliphant then moved to obtain the $500,000 Bridge Loan from Greystone CDE. Specifically, they requested that Greystone CDE forward to Oliphant in Oklahoma (where, he stated, he would be attending to other business) Bridge Loan documents for a $500,000 loan that required no contribution of capital by Plaintiff SFP and/or Oliphant to the Project, but did require Oliphant's personal guarantee on the loaned amounts (a recourse loan).[1] To be clear, the terms of the bridge loan were hardly a "surprise" to Plaintiff SFP and Oliphant, and were known to them well before the pricing and issuance of the bonds. Accordingly, at Plaintiff SFP and Oliphant's request, on December 17, 2006, Greystone CDE forwarded to Oliphant the recourse Bridge Loan documents – the loan Plaintiffs now claim was the result of unspecified "duress." The next morning, Oliphant sent and email confirming receipt of the bridge loan documents, and advising Greystone CDE in an e-mail that he "[w]ill review and provide comments and suggested changes, if any, later [that day]." Oliphant, the other signatories (including his spouse, Robin van der Vegt) and their lawyers then took approximately two days to review and execute the Bridge Loan

---

[1] We note again that Oliphant earlier had rejected a $4.3 million non-recourse loan, and had specifically agreed in writing on December 5, 2006 to the terms of a $500,0000 recourse loan (but was not yet bound).

(executed December 20, 2006). They made no request for any change to them before executing them.[2]

Six days later, on December 26, 2006, Oliphant's law firm – Gibbs & Oliphant[3] – opined in writing to the validity of the Bridge Loan documents signed by Oliphant and others. Plaintiff SFP and Oliphant then took from Greystone CDE all of the money loaned. Since the notice of default (discussed below), Plaintiffs have not repaid a dime of that money.

In opposition to the transfer motion made earlier to this Court, Plaintiffs claimed for the first time (as presumably will Oliphant's spouse) that they were under "duress" when they agreed in December 2006 to sign the Bridge Loan documents that they requested, and when they took $500,000 from Greystone CDE pursuant to it. Plaintiffs' "theory" is that, because they chose the week prior to incur nearly a quarter million dollars in bond issuance costs (against Greystone Servicing's recommendation), they now needed the money, requested it, signed for it, and took it. This, they assert, equals "duress." Of course, it does not. Nor is it legally relevant. Yet Plaintiffs, sophisticated business people,[4] claim that taking and retaining money requested against the advise of others, and thereafter shirking their responsibilities under the agreement by which they took that money, somehow constitutes "duress" *to them*.

In March 2007, Plaintiff SFP reported to Greystone Servicing that it had finally received a letter of intent from a tax credit syndicator, The Richman Group, as would be required for approval of a HUD application. Promptly thereafter, on March 19, 2007, Greystone Servicing submitted Plaintiff's application to HUD.

---

[2] The Bridge Loan documents contain, among other things, choice-of-law and forum selection provisions selecting New York as the governing law and forum for actions relating to the Bridge Loan documents.

[3] We note that the Gibbs & Oliphant website has recently undergone a redesign. Although the notice posted at the firm's website posted during the redesign period had suggested that the firm would be known as the "Gibbs Law Group," the newly redesigned pages continue to refer to the firm as Gibbs & Oliphant, albeit with Oliphant's attorney profile now removed from the firm's website. Nevertheless, Oliphant apparently remains a name partner in this firm, as confirmed by the newly designed website and his identification as such in the firm's online brochure.

[4] Gibbs & Oliphant's website described Oliphant as an experienced attorney who has handled numerous complex commercial real estate and financing transactions.

1         In April 2007, however, Plaintiff SFP reported that the Richman Group had backed out of the commitment that Oliphant had represented to Greystone that the Richman Group had made to him. In short, and once again, Plaintiff did not have a tax credit syndicator – a requirement for HUD approval. Plaintiff SFP and Oliphant were instructed by Greystone Servicing repeatedly that Plaintiff SFP needed to obtain a tax credit syndicator or their application would be rejected by HUD.

        Having failed to obtain a tax credit syndicator, on or about July 5, 2007, Plaintiff SFP and Oliphant met directly with HUD, contrary to his Engagement Agreement with Greystone Servicing. Oliphant reported to Greystone Servicing that HUD informed him at this meeting that it would reject the application.

        Greystone Servicing then intervened directly with HUD on Oliphant's behalf and convinced HUD to suspend its rejection and accept a revised and complete application from Plaintiffs within 30 days. This was confirmed in writing to Plaintiff SFP and Oliphant. Plaintiffs were again instructed by Greystone Servicing that they needed to obtain a tax credit syndicator or the application would be rejected by HUD. As the 30-day period drew to a close, Greystone Servicing told Plaintiff SFP and Oliphant that it recommended that Plaintiff SFP pull the application rather than risk another rejection by HUD – which would be irreversible.

        Next, on July 31, 2007, Plaintiffs permitted their contract for purchase of the subject real property for the Project to expire. Apart from the implications for any HUD approval, that failure also constituted an express and non-curable default of the Bridge Loan with Greystone CDE. Specifically, the Bridge Loan documents identify an event of default, among other things, as follows: "The contract for the purchase and sale of the Project expires without having been extended or a default occurs thereunder which extends beyond any applicable notice, grace or cure period." Art. IX , § 9.1 (g). Section 9.1(b) of the Bridge Loan documents makes clear that events of default under Section 9.1 cannot be cured: "[N]o notice or remedial period shall apply to any event specifically described elsewhere in this Section 9.1...."

        Plaintiff SFP, who was unable to secure a tax credit syndicator, and did not have a contract to purchase the property, agreed to pull the application. On August 9, 2007, Greystone Servicing

1  withdrew Plaintiff's application to HUD.  As Judge Patterson has found and ruled pursuant to Rule

2  56 in the New York action on Greystone CDE's claims before transferring that action to the

3  Northern District of California (Case No. C08-02756 MMC):

4  > "the contract for the purchase of the apartment building expired on

5  > July 31.  Greystone pulled the HUD after it had expired when it was

6  > clear that there was no transaction and they hadn't gotten a

7  > syndicator.  They had every right to do that.  They had the[ir]

8  > reputation on the line."

9  [U.S. District Judge Patterson.]

10  Next, on August 10, 2007, Plaintiff SFP and Oliphant emailed Greystone Servicing and

11  told it that Plaintiff SFP wanted no further participation in any application to HUD concerning the

12  Project.  In Oliphant's words, "all negotiations with Greystone on all aspects of the HUD deal"

13  should be handled by a third party, David Henry.  Oliphant represented that "David is driving the

14  bus" and that Oliphant would "have ZERO ownership interest" in the Project should it ever go

15  forward.

16  Thereafter, Plaintiffs failed to pay any sums on the Bridge Loan.  On August 21, 2007,

17  Greystone CDE delivered a letter of default to Plaintiff concerning the Bridge Loan.[5]  All amounts

18  due thereon were accelerated on September 21, 2007.

19  Greystone CDE's New York case followed thereafter, and Greystone CDE moved for

20  summary judgment on its Bridge Loan claim.  As Judge Patterson found in connection with that

21  motion for summary judgment on the Bridge Loan,

22  > "the facts weigh heavily in the plaintiff's [Greystone CDE's] favor."

23

---

24  [5] We note that in desperation, Plaintiffs have attempted to claim that this letter of default was not sent by Greystone CDE, and was instead sent by a different "Greystone" entity, based on
25  the mere fact that the first page of the letter bears a different Greystone logo.  Apart from the facts that (a) the letter is plainly signed by Greystone CDE, (b) that all parties have at all times
26  acknowledged that the default notice is from Greystone CDE and acted accordingly, and (c) Judge Patterson has made a Rule 56 finding that "it is clear that the notice came from Greystone
27  CDE," Plaintiffs admit in their *pleading* that "Oliphant received the letter dated August 21, 2007, wherein Greystone CDE declared the bridge loan in default and threatened legal enforcement."
28  In addition to Judge Patterson's finding, this pleading admission is conclusive and binding.

However, the Court denied the motion without prejudice due to technical violations of a local rule concerning the separate statement of undisputed facts, and then transferred the matter to the Northern District of California.

The claims made by Greystone CDE and by Plaintiffs in the action transferred from the Southern District of New York to this Court (Case No. C08-02756 MMC) are the same claims made by Greystone CDE and Plaintiffs in this first-filed action.

3.  **LEGAL ISSUES:**

**Plaintiffs' Statement**.  The Complaint alleges that Greystone Servicing failed to timely present and pursue the HUD application on Plaintiffs' behalf and undermined their ability to succeed with the Santa Fe Pointe Project.  Further, that both Greystone entities improperly saddled Plaintiffs with an inadequate loan, wrongfully declared default on the loan, and thereafter disparaged Plaintiffs to the financial community.  The Complaint alleges causes of action for (a) negligence, (b) breach of fiduciary duty, (c) intentional interference with prospective economic advantage, (d) negligent interference with prospective economic advantage, (e) anticipatory breach, and (f) breach of the covenant of good faith and fair dealing.  Plaintiffs also seek declaratory relief concerning the rights and obligations of the parties under the bridge loans and personal guarantees.

Plaintiffs contend that California law applies to Plaintiffs' tort claims.  The elements of those claims are relatively straightforward.  Plaintiffs' case is largely fact driven.

**Defendants' Statement**.

Defendant Greystone CDE believes that it is entitled to judgment in its favor on its claims for breach of contract against Plaintiff SFP and Oliphant.  It, as did Judge Patterson, believes that no fact-issues preclude summary judgment on these claims in Greystone CDE's favor, as the defaults are clear and not curable.  Further, the guaranties at issue are unconditional and foreclose Plaintiffs' claims and defenses.  For example, Plaintiff Oliphant agreed in the Guaranty and Suretyship Agreement that his personal guarantee is "absolute and unconditional," and that "[n]o set-off, claim, reduction or diminution of any obligation, or any defense of any kind or nature (other than payment and performance in full of the Guaranteed Obligations) which the Borrower or

1 any Guarantor now has or hereafter may have against the Lender shall be available hereunder to
2 any Guarantor against the Lender."  Plaintiffs have waived their claims and, under New York law,
3 such waivers among sophisticated parties overcome any defense to enforcement in this case.
4       As for Plaintiffs' tort claims, most of them already have been dismissed by this Court.
5 Specifically, Defendants' motion to dismiss (doc. # 62) was granted in part and denied party by the
6 Court's order (doc. # 82) entered August 1, 2008.  Pursuant to the Court's ruling, the First and
7 Second Causes of Action asserted in the Second Amended Complaint are now limited to claims
8 between Plaintiff SFP and Defendant Greystone Servicing; and the Fourth, Fifth and Sixth Causes
9 of Action are now limited to claims by Plaintiff SFP.  Plaintiffs Oliphant, RANT and SFM no
10 longer are proper parties to these claims.  No leave to amend was granted.  Further, as discussed
11 above, many if not all of these claims have been unconditionally waived by Plaintiffs, and are
12 subject to summary adjudication or judgment on the pleadings in favor of the Defendants.

13 **4.     MOTIONS:**

14       Defendants have certain discovery disputes with Plaintiffs that they are attempting to work
15 through.  Defendants sent meet-and-confer correspondence to Plaintiffs on July 21, 2008 relating
16 to perceived deficiencies in Plaintiffs' discovery responses.  Plaintiffs' response to the meet and
17 confer letter is due on August 18, 2008.  In addition, Defendants have noticed the deposition of Mr.
18 Oliphant to commence on August 26, 2008 at 9:00 a.m, to continue day to day thereafter until
19 complete.  Defendants believe the deposition may take longer than the seven hours provided in
20 Federal Rule of Civil Procedure 30(d)(2), and note that on February 8, 2008, when the length of
21 Mr. Oliphant's deposition was raised directly with Magistrate Judge Spero, Judge Spero stated that,
22 given Mr. Oliphant's central role in this matter, Mr. Oliphant's deposition necessarily will exceed
23 seven hours.  Plaintiffs state that they will cooperate with deposition timing issues so long as
24 Defendants are proceeding expeditiously with the examination
25       Defendant Greystone CDE anticipates making a motion for summary judgment on its
26 contract claims.  Defendants also anticipate filing dispositive motions, including a motion for
27 judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure as to
28

1  remaining claims by Plaintiffs RANT, SFM and Oliphant.  Other dispositive motions may be filed,
2  depending on facts developed in discovery.

3       Given that these cases are intertwined, the parties request that (1) the later-filed New York
4  action recently transferred to this Court (Case No. C08-02756 MMC) now be consolidated with the
5  prior-filed action (Case No. C07-05454), and (2) that the parties move forward in this consolidated
6  action with Greystone CDE's claims pled in the transferred New York Action (Case No. C08-
7  02756 MMC) and SFP, SFM, Oliphant and Rant's claims pled in Case No. C07-05454 deemed the
8  operative pleadings.

9  **5.    AMENDMENT OF PLEADINGS:**

10       Defendant Greystone CDE may amend its pleading to add Robin van der Vegt as a
11  defendant/counter-defendant on its claims in Case No. C08-02756 MMC, and to add libel claims
12  against Plaintiffs.  Plaintiffs request leave to amend their Second Amended Complaint to cure any
13  deficiencies noted in the Court's August 1, 2008 Order Granting in Part and Denying in Part
14  Defendants' Motion To Dismiss.  Defendants note that in this regard, Plaintiffs made a similar
15  request on August 6, 2008, titled "Request for Clarification of Ruling on Motion to Dismiss;
16  Request for Leave to Amend" (doc. # 83), which Defendants opposed as both procedurally
17  improper and substantively without merit.  (doc. # 84).  Defendants believe that Plaintiffs' same
18  request in this Joint Report is procedurally improper and substantively deficient for all the same
19  reasons (set forth in Docket Entry 84) that Plaintiffs' August 6 request was improper.

20  **6.    EVIDENCE PRESERVATION:**

21       Both sides have taken steps to preserve hard copy files and electronically-recorded
22  material.

23  **7.    DISCLOSURES:**

24       Counsel have concluded their Rule 26 conference.  Initial disclosures under Federal
25  Rule 26 were made on or about February 1, 2008, concurrent with the service and filing of the first
26  Joint Case Management Conference Statement.

27
28

**8.   DISCOVERY:**

The parties have exchanged documents and written discovery. Defendants have noticed the deposition of Mr. Oliphant to commence on August 26, 2008 at 9:00 a.m. The parties do not presently believe it is necessary to deviate from the deposition and interrogatory limitations of Federal Rules of Civil Procedure, with the exception that Defendants believe that Mr. Oliphant's deposition necessarily will exceed seven hours, and note that on February 8, 2008, when the length of Mr. Oliphant's deposition was raised directly with Judge Spero, Judge Spero stated that, given his central role in this matter, Mr. Oliphant's deposition necessarily will exceed seven hours.

The parties believe that depositions of other party and non-party witnesses will proceed in the months ahead. Plaintiffs have presently identified four (and possibly six) employees of Defendants and six non-party witnesses who would have relevant testimony. Defendants will depose, among others, Plaintiffs and other individuals identified by Plaintiffs in their initial disclosures.

Defendants note that at a February 8, 2008 hearing before Judge Spero, Judge Spero confirmed that the parties will be required to travel to the residences of the person deposed or designated for deposition, and note that all parties acknowledged Judge Spero's ruling in a prior Status Report filed with the Court in the matter. Plaintiffs have requested that all depositions of employees of Defendants be taken at the offices of Greystone Servicing in Virginia, and that the depositions be taken during a single block of time so as to avoid multiple out-of-state trips. Defendants believe that Court's prior ruling on this matter must be followed, and that the convenience of the witnesses and parties outweigh the convenience of Plaintiffs' counsel.

**9.   CLASS ACTIONS:**

Not applicable.

**10.   RELATED CASES:**

Defendant Greystone CDE, LLC filed suit in the Southern District of New York on September 26, 2007 to collect on the more than $500,000 owed on the loan guaranties made by Plaintiffs. Defendant Greystone Servicing Corporation, Inc. is a counter-defendant in that action. The New York action was transferred to the Northern District of California on or about May 28,

1  2008, and has been assigned for all purposes to the Honorable Maxine M. Chesney, United States
2  District Judge as case number C08-02756 MMC.
3        Given that these cases are intertwined, the parties request that (1) the later-filed New York
4  action recently transferred to this Court (Case No. C08-02756 MMC) now be consolidated with the
5  prior-filed action (Case No. C07-05454 MMC), and (2) that the parties move forward in this
6  consolidated action with Greystone CDE's claims pled in the transferred New York Action (Case
7  No. C08-02756 MMC) and SFP, SFM, Oliphant and Rant's claims pled in Case No. C07-05454
8  MMC deemed the operative pleadings. Greystone CDE and Greystone Servicing agree that SFP,
9  SFM, Oliphant and Rant may occupy the "plaintiffs" seat in the courtroom.

10  **11.  RELIEF:**

11        Plaintiffs will seek the economic value of the lost business opportunity, which will be
12  subject to expert analysis and proof. Plaintiffs also seek a declaration that Defendants wrongfully
13  declared default of the bridge loan. Defendants submit that Plaintiffs are not entitled to any relief
14  by this action. Defendant Greystone CDE is entitled to the relief originally sought by its claims in
15  the New York court, now transferred to the Northern District of California, including repayment of
16  all outstanding loan balances owed by Plaintiffs to Greystone CDE.

17  **12.  SETTLEMENT AND ADR:**

18        The parties engaged in mediation on May 22, 2008 concerning all claims in both the
19  California and New York actions, in San Francisco before Panel Mediator Peter Sherwood. The
20  matter was not resolved. The parties agree that further mediation at this time would not be
21  productive, but are willing to reconsider after discovery has been completed.

22  **13.  DECLINATION OF MAGISTRATE JUDGE JURISDICTION:**

23        Defendants declined to consent to magistrate judge jurisdiction. Both matters are now
24  assigned to the Honorable Maxine M. Chesney, United States District Judge for all further
25  proceedings, including trial and entry of judgment.

26  **14.  OTHER REFERENCES:**

27        The matter is not suitable for reference to binding arbitration, a special master, or the
28  Judicial Panel on Multidistrict Litigation.

**15. NARROWING OF ISSUES:**

The parties believe agreement can be reached as to the authenticity of the underlying contracts. Discovery may develop other areas where issues can be narrowed.

**16. EXPEDITED SCHEDULE**:

The parties do not believe expedited scheduling is appropriate.

**17. SCHEDULING:**

No dates are currently set in the transferred action, Case No. C08-02756 MMC. Magistrate Judge Spero previously set dates in Case No. C07-05454, as follows:

| | |
|---|---|
| October 31, 2008: | Discovery cut-off. |
| November 10, 2008: | Expert witness disclosures. |
| December 15, 2008: | Expert discovery cut-off. |
| February 13, 2009: | Hearing on dispositive motions. |
| May 1, 2009: | Pre-trial Conference. |
| May 11, 2009: | Trial commences. |

These dates have been vacated.

**18. TRIAL:**

Plaintiffs have demanded a jury. The parties contemplate 10-15 trial days.

**19. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS:**

**Plaintiffs' Disclosure**. Plaintiffs have filed a "Certification of Interested Entities or Persons" under Civil L.R. 3-16 certifying that, other than the named parties, there is no such interest to report.

**Defendants' Disclosure**. Defendants' filed a "Certificate of Interested Entities or Persons" under Civil L.R. 3-16 on October 25, 2007.

///

1  **20.    <u>OTHER MATTERS</u>:**

2       Not applicable.

3  Dated: August 15, 2008                    JONES DAY

5                                             By: /s/ Mark D. Kemple
6                                                 Mark D. Kemple
                                                  Erik K. Swanholt

7                                             Attorneys for Defendants
                                              Greystone Servicing Corporation, Inc. and
8                                             Greystone CDE, LLC

9  Dated: August 15, 2008                    PINNACLE LAW GROUP LLP

11                                            By: /s/ William W. Schofield
12                                                Eric J. Farber
                                                  William W. Schofield

13                                            Attorneys for Plaintiffs

LAI-2968476v3                  - 16 -          Joint Case Management Statement
                                               C07-05454 MMC & C08-02756 MMC